PRESENT: ROYCE, Ch. J., ROSS, POWERS, TAFT, ROWELL, TYLER AND MUNSON, JJ.

---

VERMONT AND CANADA RAILROAD CO., ET AL., *v.*
VERMONT CENTRAL RAILROAD CO., ET AL.
RUTLAND RAILROAD CO., *Petitioner.*
CENTRAL VERMONT RAILROAD
CO., ET AL., *Petitionees.*

*Interest.  Taxation of railway gross receipts.  When unconstitutional law may be treated as valid.*

1.  By the terms of a lease executed in 1870 the petitionee agreed to pay the petitioner a certain rental for the use of its railroad.  As security for the payment of this rent the petitionee gave the petitioner an order upon the Cheshire Railroad Co., for $20,000 monthly, to be paid in due course of settlement then in practice out of any traffic balances. The rent was payable semi-annually and it was provided by the lease that any sums received upon the order should be applied to the payment of the rent free from any claim for interest.  By the course of settlement then in practice between the roads payment was made upon this order for each month about the 25th of the succeeding month.  Subsequently differences arose between the companies, payments were suspended under the lease and upon the order, and as a result the original lease was modified by reducing the amount of rent and making it payable monthly upon the last day of each month, the

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

other provisions of the original lease being continued in force. Thereupon payments upon the order were resumed, and the monthly instalments were thereafter paid, 1st, by a remittance directly from the petitionee upon the last day of each month for all the rent due except this $20,000. 2nd, by a remittance from the Cheshire Co. for the $20.000, about the 25th of each month after it fell due. *Held*, that the petitioner was entitled to interest upon this $20,000, from the time it fell due until it was actually paid.

2. A State law levying a tax upon the gross receipts of railroad companies, and providing that in case of a railroad operated under lease, the tax shall be paid by the lessor and deducted from the rent covenanted for in the lease, is not unconstitutional as against the lessor in that it impairs the obligation of the contract. The State may adopt that method of collecting the tax from the lessor.

3. Such a law is unconstitutional as a reglation of commerce in so far as it taxes gross receipts derived from interstate business. No. 1, Acts of 1882, is unconstitutional in that respect.

4. But inasmuch as the decisions of the Supreme Court of the United States apparently upheld the validity of such a law at the time of its enactment in 1882 and down to May 27, 1887, the petitionee was justified in treating it as valid, and in paying the taxes levied by it, and may retain such sums out of the rent stipulated for in the lease, although the contract of lease was made before the enactment of the law, and although the petitioner notified the petitionee that it claimed the law to be invalid, and should insist upon its rent in full.

5. Further, it had been determined in a suit between these same parties previous to the passage of this act that under the provisions of the lease taxes against the leased property should be paid by the petitioner. This tax was in essence against the property of the petitioner. The statute merely made the petitionee the collector, and imposed a severe penalty unless it did pay over this tax to the State. The petitioner never offered to indemnify the petitionee against the consequences of a refusal to so pay, nor did it begin any proceedings to have the law declared invalid. Hence as prudent men the petitionee should have treated the act as valid, and may retain the amounts paid under it.

This was a petition by the Rutland Railroad Co. against the Central Vermont Railroad Co. and the Consolidated Railroad Co. of Vermont, asking for an order to compel the payment of rent in arrear.

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

Heard upon pleadings and master's report at the April term, Franklin county, 1888. Veazey, chancellor, dismissed the petition *pro forma*. The petitioner appeals.

The petition was filed November 10, 1886. It alleged the various facts necessary to show that the remedy sought was an appropriate one, that the defendants were liable to pay to the petitionee certain rents, and that these rents had not been fully paid. The defendants answered that the rents had been fully paid. The case was referred to a master to find and report the facts, and from his report it appeared:

The petitioner on December 30, 1870, by written contract, leased its railroad for the period of twenty years from January 1, 1871, to the trustees and managers of the Vermont Central and Vermont and Canada Railroads, who were acting as receivers under the authority of the Court of Chancery. The agreement for the payment of rent in said contract of lease was as follows:

"ART. 5. The parties of the second part agree to pay to the parties of the first part, for the consideration herein mentioned, three hundred and seventy-six thousand dollars ($376,000) annually, payable in semi-annual instalments of one hundred and eighty thousand dollars each, on the 20th days of January and July in each year hereafter, during the continuance of this contract, the first instalment to be payable on the 20th. day of July, 1871.

They also agree to pay the United States income tax, chargable upon the preferred stock and bonds of the Rutland Railroad Co., and in addition thereto to pay on the first day of January, 1873, forty thousand five hundred dollars, ($40,500).

On the first day of January, 1874, fifty-four thousand dollars, (54,000).

On the first day of July, 1874, forty thousand five hundred dollars, ($40,500).

On the first day of January, 1875, forty thousand five hundred dollars, ($40,500).

On the first day of July, 1875, sixty-seven thousand five hundred dollars, ($67,500).

On the first day of January, 1876, sixty-seven thousand five hundred dollars, ($67,500).

On the first day of July, 1876, eighty-one thousand dollars, ($81,000).

On the first day of January, 1877, eighty-one thousand dollars, ($81,000).

On the first day of July, 1877, eighty-one thousand dollars, ($81,000).

On the first day of January, 1878, eighty-one thousand dollars, ($81,000).

On the first day of July, 1878, eighty-one thousand dollars, ($81,000):

On the first day of January, 1879, eighty-one thousand dollars, ($81,000).

On the first day of July, 1879, ninety-four thousand five hundred dollars, (94,500).

And at that rate for each succeeding six months during the continuance of this contract.

And the parties of the second part also agree to pay for the purpose of keeping up the organization of said Rutland Railroad company and for incidental expenses, eight thousand dollars annually."

As a part of this transaction the trustees and managers gave to the petitioner an order upon the Cheshire Railroad Co. as follows:

" Vermont Central and Vermont & Canada Railroad,
Office of President and Managers,

St. Albans, Vt., Jan. 30, 1871.

E. MURDOCK, Jr., Esq., President Cheshire Railroad Co.:

*Dear Sir:* A contract for operating and managing the Rutland Railroad, the Vermont Valley Railroad, the Vermont & Massachusetts Railroad (between Brattleboro and Grout's Corner), the Whitehall & Plattsburgh Railroad (Northern and

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

Southern Divisions), the Plattsburgh & Montreal Railroad, the Addison Railroad, and the steamboat "Oakes Ames," by the trustees and managers of the Vermont Central and Vermont & Canada Railroads, having been made and entered into by us with the Rutland Railroad Co., extending for a period of twenty (20) years from the first day of January, 1871. You will please to pay to the order of the Rutland Railroad Co. the monthly balance which may be due from your company to us in settlement of traffic accounts, to an amount not exceeding ten thousand (10,000) dollars per month, during the year 1871, to Jan. 1, 1872.

From and after the first day of January, 1872, you will pay to the Rutland Railroad Co. or order, from such balances due to us the sum of twenty thousand (20,000) dollars per month, such payments to be made by your company monthly, in the due course of settlement between the roads now in practice, subject, however, to be revoked by us, when we are ousted from possession of said railroad and property, under any of the terms and stipulations contained in the contract between us and the Rutland Railroad Co. You will please take the proper receipts from the Rutland Railroad Co. for such payments, which will be your vouchers for such amounts in settlement with us.

Very truly yours,

J. GREGORY SMITH,

President Trustees and Managers.

The within order is accepted by vote of the directors of the Cheshire Railroad Co.

E. MURDOCK, JR., President."

Boston, Feb. 8, 1871.

Referring to this order and another upon the Vermont Valley Railroad Co., not now material to be considered, the following clause was inserted in the aforesaid contract of lease:

"WHEREAS, The party of the second part has given to the party of the first part an order upon the Connecticut River Railroad Co. for such balance as may be due to the party of the second part monthly, from the business passing over the Vermont Valley road, not exceeding thirty thousand dollars monthly on an average, and has also given an order upon the Cheshire Railroad Co. for such balance as may be due to the party of the second part to the amount of ten thousand dollars per month for

the space of two years, and afterwards to the amount of twenty thousand dollars per month, now, it is agreed by the parties hereto that all money received by the parties of the first part on the orders aforesaid shall be applied free from any claim for interest to the payment of the rents for the different roads herein specified as the same become due."

In reference to the meaning of the words " in due course of settlement between the roads now in practice," the master found:

" The Rutland Railroad connects with the Cheshire Railroad at Bellows Falls, and, with other railroads, they form a line from points westward to Boston, over which business is done for which collections are made and balances at stated times are remitted between the companies.

These balances, on account of the greater flow of business eastward, are always largely against the Cheshire Railroad Co. on this part of the line, and in its favor on the part toward Boston. By the usual course of business a large part of the collections for this line of roads is made by that terminating in Boston. At that time monthly balances between that and the next road in the line were struck as soon as could conveniently be done after the expiration of each month, and the amount paid over, and then the balances between that and the next road were struck and the amount paid over and so on in succession throughout the line. The balances between the Cheshire Railroad Co. and the operators of the Rutland Railroad would not be struck until about the 25th of the succeeding month."

The trustees and managers entered into the possession of the property under the contract of lease, and continued in its enjoyment until June 21, 1873, when the defendant Central Vermont Railroad Co. succeeded to their trust and took the property subject to all the liabilities imposed by said contract of lease. Disputes having arisen between the parties, payment was stopped upon the aforesaid Cheshire order until the execution of a further written agreement between the petitioner and the Central Vermont Co. upon Feb. 25, 1876, in modification of the contract of Dec. 30, 1870. This agreement was known as the contract of modification, and the Central Vermont Co. continued to possess the property under it down to and at the time of the

hearing before the master. Its provisions, so far as material, were as follows:

"WHEREAS, A certain contract in writing, dated Dec. 30, 1870, was heretofore entered into by the Rutland Railroad Co. of the first part, and J. Gregory Smith, Joseph Clark, Worthington C. Smith and Benjamin P. Cheney, trustees and managers of the Vermont Central and Vermont & Canada Railroads of the second part, which is hereby referred to as part hereof:

AND WHEREAS, Said trustees and managers, for the purpose of securing the payment of the rent provided by the terms of said contract to be paid the said Rutland Railroad Co., drew theirs two several orders in favor of said Rutland Railroad Co., to wit: One upon the Connecticut River Railroad Co., and one upon the Cheshire Railroad Co., both dated January 30, 1871, and both accepted by the respective Railroad Cos. upon which they were drawn, which orders and acceptances are referred to as part hereof:

AND WHEREAS, Certain controversies have arisen between said Rutland Railroad Co. and the Central Vermont Railroad Co., successor in said trust, as aforesaid, touching the rents due and to become due to said Rutland Railroad Co., under said contract of Dec. 30, 1870, assignment of leases and orders drawn and accepted as aforesaid, as well as in respect to said Addison Railroad and various other matters.

Now for the purpose of effectually settling and terminating said controversies and all of them, and every and all matters of dispute, claim or question of every name, nature or description, that can, or may now exist between said Rutland Railroad Co. and said J. Gregory Smith and others, trustees and managers as aforesaid, or said trust whereof they were trustees and managers, or the Central Vermont Railroad Co. successors in said trust as receiver and manager, and in consideration of the settlement and adjustment of all such disputes and controversies:

It is hereby mutually covenanted and agreed by and between said Rutland Railroad Co. of the first part, and said Central Vermont Railroad Co., receiver and manager as aforesaid, and in its capacity of receiver and manager only, of the second part, as follows:

Article 1. From and after the first day of Februrary, 1876, the party of the second part hereto agrees to pay to the party of the first part as rent for the use, management and control of said Rutland and Addison Railroads and the property connected

therewith or with either the sum hereinafter mentioned, which shall be ascertained as follows:

The gross earnings of the Vermont Central, Vermont & Canada, Rutland & Addison Railroads shall be semi-annually added together. Of the aggregate sum so arrived at there shall be set apart thirty-six and one-fourth per cent. thereof as the share of said Rutland and Addison Railroads of said gross earnings, out of which share the party of the second part may retain seventy-five per cent. as an agreed proportion for the payment of all expenses of operating said Rutland and Addison Railroads and maintaining said roads, their structure and equipment in good order and condition, and keeping the same in repair and of all other expenses incumbent upon the party of the second part in the operation of said railoads under and as provided in said contract of Dec. 30, 1870; and said party of the second part shall pay over to the party of the first part, as hereinafter provided, the balance being twenty-five per cent. of said thirty-six and one-fourth per cent, provided however, and said party of the second part hereby agrees and does hereby guarantee that the amount ascertained as aforesaid, and payable to the party of the first part, shall amount to not less than the sum of two hundred and fifty thousand dollars for each and every year, commencing Feb. 1, 1875, during the continuance as modified hereby. And the party of the second part hereby covenants, promises and agrees to and with the party of the first part to pay said annual sum of two hundred and fifty thousand dollars, and in addition thereto, the sum of eight thousand dollars annually, as provided in said contract of Dec. 30, 1870, for the purpose of keeping up the organization of said Rutland Railroad Co. and of paying the incidental expenses thereof. Said sums to be paid in equal monthly installments and on the last day of each month during the time said party of the second part shall hold and possess said railroads under said contract as modified thereby. And it is hereby further understood and agreed that if in any year said twenty-five per cent. gross earnings of said Vermont Central, Vermont & Canada, Rutland & Addison Railroads shall exceed said sum of two hundred and fifty thousand dollars, the amount of such excess shall be paid to the party of the first part by the party of the second part semi-annually, and within thirty days from and after the first days of January and July of each year. The party of the second part also agrees to keep accurate accounts of said gross earnings, and the books and vouchers pertaining to said accounts are to be open to the inspection and examination of the president

and treasurer of said party of the first part, or either of them. The foregoing provisions of this article to be in lieu of and to stand in place of the provisions of said contract of Dec. 30, 1870, in relation to the rents payable for the use of said Rutland and Addison Railroads."

The modification further provided that payments upon the Cheshire order should be forthwith resumed at the rate of $20,000 per month.

Previously to July, 1883, the rent had been paid as follows : Of the $21,500 due on the last day of each month $1,500 had been paid directly by the Central Vermont Co. when due. The remaining $20,000 had been paid by the Cheshire Co. upon the order about the 25th of the month after it fell due. No claim was made to recover anything before July, 1883. Subsequently to that time the $20,000 monthly which came by way of the Cheshire Co. continued to be paid as before about the 25th of the month after it fell due ; and the first claim of the petitioner was for interest on this $20,000 from the last day of the month until the time when it was actually paid from month to month.

It did not appear that the petitioner had ever objected directly to the defentant as to this manner of procedure. It did appear that such objection had been made to the Cheshire Co., and that duplicate receipts were taken by that company from the petitioner, which specified the date of payment, and one of which was sent to the defendant Central Vt. Co.

The second claim of the petitioner was that since July, 1883, the monthly payment of $1,500 had been withheld entirely by the defendant.

This the defendant admitted, but claimed that it had properly retained these sums and paid them to the State as taxes in virtue of the provisions of No. 1, Acts of 1882, and amendments thereto. The following are the sections relating to this controversy :

"Sec. 1. Funds for the payment of State expenses shall be

raised by direct State taxes upon the corporate franchise or business in this State of railroad, insurance, guarantee, express, telegraph, telephone, steamboat, car and transportation companies, savings banks, savings institutions and trust companies as provided in this act, and shall be payable in money to the State treasurer for the use of the State."

"Sec. 2. Every corporation, person or persons owning or operating a railroad in this State, whether as owner, lessee, receiver, trustee or otherwise, shall pay a tax to the State on the entire gross earnings of such railroad, if such railroad is situated wholly within the State. If such railroad is situated partly within and partly without the State the tax shall be upon such proportion of the entire gross earnings of such railroad as the mileage of trains run in this State bears to the mileage of all the trains run on the entire main line of the road."

"Sec. 12. The tax upon such earnings shall be rated according to the earnings per mile of road in this State, and is hereby assessed, at the rate of two per cent. on the first two thousand dollars a mile or total earnings of less than that sum; at the rate of three per cent. on the first thousand or part thereof above two thousand dollars a mile; at the rate of four per cent. on the first thousand or part thereof above three thousand dollars a mile; and when the earnings exceed four thousand dollars a mile, at the rate of five per cent. on all earnings above that sum."

"Sec. 13. Such a tax shall be payable one-half semi-annually in the months of February and August, and shall be based upon the gross earnings during the six months terminating with the last day of December or June next preceding."

"Sec. 14. When a railroad is operated in this State by a corporation, person or persons by virtue of a lease or other contract, the aforesaid tax shall be paid by the lessee of such railroad or holder of such contract as the case may be; and the said tax shall be charged against and deducted from any payments due or to become due the lessor of such railroad, or person, persons or corporation granting such contract, as the case may be, on account of such lease or contract; unless in the provisions of such lease or contract it is stipulated otherwise."

The master found that in accordance with the foregoing act the defendant had actually paid to the State as taxes the greater part of the sums so retained; further that the gross earnings upon which these taxes were assessed largely "accrued from transporta-

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

tion of persons and property between other States and countries through this State; and between this State and other States and countries."

The first payment of taxes was due in August, 1883, for the half year ending June 30. It was paid about August 30 by the defendant, who notified the petitioner of the payment September 12, inquiring at the same time how it should be settled. Thereupon the treasurer of the petitioner addressed to the defendant the following letter, dated September 19, 1883.

"*Dear Sir:* Yours of September 12 was received in due season, and contents carefully considered, and after consultation with the attorneys of this corporation, I will say in reply, the Rutland Railroad Co. claims that the tax referred to in your favor of the 12th inst. to be invalid against said company, and that this company is entitled to its rent in full as stipulated in its lease. Accordingly we demand payment of the same in full without deduction on account of said tax, we leaving the matter to stand as before in order to preserve our legal rights in the premises unprejudiced. Of course the matter of settlement and litigation of the question involved will go on with amicable spirit and without misunderstanding.
Yours very respectfully,
JOHN A. MEAD, Treasurer."

There was no evidence of any further protest on the part of the defendant at any time against the payment of these taxes, nor of any further objection on the part of the petitioner to their payment, nor of any acquiescence therein up to the filing of the petition in the case Nov. 10, 1886.

It appeared that after the execution of the contract of modification disputes arose as to the respective liability of the parties for the payment of taxes thereunder; and that the petitioner brought a bill to the March term, 1877, of the Rutland County Court of Chancery, praying for a construction of the modified contract in that respect, and that the defendant be decreed to pay all taxes which had been or might thereafter be assessed "on

the real estate of the orator." This suit was finally determined at the January term of the Rutland County Supreme Court, 1878, when the following mandate was handed down :

" It is adjudged that said decree of the Court of Chancery be reversed and that said cause be remanded to the Court of Chancery with directions that the defendants, its successors and assigns are liable to pay all taxes that have been and hereafter shall be, during the time of the contract between the orator and defendant legally assessed upon any and all property of the Addison Railroad Co., and that the defendant is not liable to pay taxes assessed upon the property of the Rutland Railroad Co., without costs to either party."

The reference in the mandate to the taxes upon the property of the Addison Railroad Co. is immaterial here.

*C. A. Prouty,* and *Stewart & Wilds,* for the petitioner.

1.   The petitioner is entitled to interest on the deferred payments. By the terms of the contract of modification the rent was payable on the last day of each month. In point of fact $20,000 of it was not paid until about the 25th of the succeeding month. The defendant is liable for interest from the time it fell due until it was actually paid.

The Cheshire order was not accepted by the petitioner as a payment, but simply as a security, and the petitioner was bound to account for only so much as the security produced.

The provision in the original contract that the sums received on this order should be applied in payment of rent free from any claim as to interest had reference to the condition of things under that contract, where the payments upon the order were received by the petitioner before the rent fell due.

2.   The defendant had no right to retain from the rent the sums paid by it as taxes.

(*a*) This tax was not a tax against the petitioner, but against the defendant. Both the original contract and the con-

tract of modification are silent as to the payment of taxes. This being so any tax against the property, franchise, or income of the petitioner should be paid by it, for they belong to the petitioner ; any tax against the use of the road should be borne by the defendant, for that belongs to the defendant.

This is not a tax upon the property, nor the income, nor the franchise. *Philadelphia, &c., Steamship Co.* v. *Pennsylvania,* 122 U. S. 326.

It is a tax simply and solely upon the business and should be paid by the defendant who originates, controls and owns the business.

(*b*) Admitting that this was a tax against the petitioner, the State had no right to collect it in that way. The defendant had promised to pay the petitioner a certain sum annually. The act directs the defendant to pay a portion of this to the State, instead of paying it to the petitioner, and in this violates the obligation of the contract and is void. *Murray* v. *Charleston,* 96 U. S. 432 ; *Hartman* v. *Greenhow,* 102 U. S. 672.

This is not like a tax laid upon the leased property, and which the lessee may pay to protect himself in the possession of the property.

Even such a tax the lessee could not pay at the expense of the landlord unless in all respects valid. Wood Land. & Ten. §§ 685–7, 690 ; *Clark* v. *Cooledge,* 8 Kansas 189.

(*c*) This tax is not valid. It is a tax upon the gross receipts derived from interstate commerce. It is therefore, an interference with that commerce, and as such unconstitutional and void.

*Welton* v. *Missouri,* 91 U. S. 275 ; *Robbins* v. *Shelby Co.,* 120 U. S. 493 ; *Wabash, St. Louis & Pacific R. R.* v. *Illinois,* 118 U. S. 557 ; *Fargo* v. *Stevens,* 121 U. S. 230 ; *Philadelphia, etc., S. S. Co.,* v. *Pennsylvania,* 122 U. S. 326 ; *State* v. *Woodruff S. & P. Coach Co.,* (Ind.) 15 N. E. Rep. 814 ; *D. & H. Canal Co.,* v. *Penn.,* 17 At. Rep. 175.

If the law is void the petitioner is clearly entitled to recover what has been paid under it. The defendant promised to pay the petitioner certain sums. Those sums it has not paid. As an excuse for not having paid them it sets up this act. Clearly if the excuse fails the sums are still due. Equally clear is it that the justification does fail if the law is unconstitutional; for nothing is better settled than that an unconstitutional act can justify no one.

"An unconsitutional act is not a law; it binds no one and protects no one."

*Little Rock, &c. Rd. Co.* v. *Worthen*, 120 U. S. 97; *Kelley* v. *Raines*, 4 Gray 83; *Marbury* v. *Madison*, I Cranch, 177; *Osborn et al.* v. *Bank*, 9 Wheat. 830; *Patterson, J. in Van Horne* v. *Dorrance*, 2 Dall. 308; *Strong* v. *Daniel*, 5 Ind. 348; *Sumner, et al.* v. *Beeber*, 50 Ind. 341; *Woolsey* v. *Dodge*, 6 McLean 146.; *Meagher* v. *County of Storey*, 5 Nev. 244; I Kent 449; *Elliot* v *Swartwout*, 10 Pet. 137; *U. S.* v *Lee*, 106 U. S. 196; *Norton* v. *Shelby Co.*, 118 U. S. 425, 441; *Ripley* v. *Gelston*, 9 John, 201.

The fact that the profession may at some time have believed that the Federal Court would, or have understood that the Federal Court had held a similar law constitutional does not help the defendant. If this law is now void it has always been. This is not at all the case of a contract made in view of a judicial interpretation of a statute. In that case the parties contract with reference to such interpretation. They have consented to be bound by it and therefore they ought to be. But no decision can be found where it has been held that a party can be deprived of his property against his will in virtue of an unconstitutional enactment. And that is just what the defendant contends for here; for here the contract was made long before the act was passed, and the petitioner has from the first protested by letter and by the institution of this suit that the law was invalid.

*B. F. Fifield, E. J. Phelps, Albert Cross* and *L. II. Thompson,* for the defendant.

1. The petitioner can claim no interest on the deferred payments. The report fairly shows that the payment of this $20,-000 upon the Cheshire order was a payment of so much rent, and not merely a payment of so much on account of rent, and that therefore no claim of interest thereon survived.

Moreover the stipulation in the original lease that all sums received on the order should be applied to the payment of rent free from any claim for interest is in force under the modified contract, and controls this question.

2. The defendant may retain the sums paid by it as taxes. The lease is silent upon this subject. When nothing is said in the lease the rule is that the lessor is liable for taxes, and that if he does not pay the lessee may and reimburse himself out of the rent.

*Taylor Land. & Ten.* § § 341, 395.

It has once been held in a suit between these same parties that the petitioner was liable for the taxes assessed against the leased property.

3. This tax is in essence a tax against the Rutland railroad, and so against the petitioner as if it were directly upon the property of the petitioner ; and is such a tax that it might be paid and retained by the defendant either at common law or under the Act of 1882.

4. The act is not unconstitutional. It is not a tax upon the gross receipts, but upon the franchise the value of which is estimated by a reference to the gross receipts.

*Minot, Jr., v. Philadelphia, Wilmington & Baltimore R. R. Co., et al.,* 18 Wall. 206; *Thompson* v. *Union Pacific R. R. Co.,* 9 Wall. 599; *Union Pacific R. R. Co., v. Peniston,* 18 Wall. 5; *Hamilton Mfg. Co.* v. *Mass.,* 6 Wall, 632; *Soc'y.*

*of Savings* v. *Coite,* 6 Wall. 594; *P. & R. R. R. Co.* y. *Penn.,* 15 Wall. 206; *Minot* v. *P. W. & B. R. R. Co.,* 18 Wall. 206; *Osburn* v. *U. S. Bank,* 9 Wheat. 859; *Brown* v. *Maryland,* 12 Wheat. 444; *P. & W. R. R. Co.* v. *Maryland,* 10 How. 376; *Prov. Bank* v. *Billings,* 4 Pet. 563; *Prov. Inst.* v. *Mass.,* 6 Wall. 611.

5.    Even if the law was in fact unconstutional, the defendant had the right, and it was its duty to treat it as valid until its validity was declared. Cool. Tax. 559; *Session* v. *Botts,* 34 Tex. 335; *People* v. *Solomon,* 54 Ill. 46.

The petitioner is in a Court of Equity asking affimative relief. It must therefore do equity, and the relief sought must not be unconscionable or inequitable. I Sto. Eq. Jur. §64, e; I Redf. Railways 76; High Eq. Rem. 436-7; I Wood R. R. Law, 455 and note.

The petitioner might have enjoined the defendant from the payment of these taxes. The defendant could not have refused to pay without subjecting itself to severe penalties. *Allen* v. *Baltimore & Ohio R. R.,* 114 U. S. 311-314; *Dodge* v. *Woolsey,* 18 How 331; *Osborne* v. *U. S. Bank,* 9 Wheat. 739; *Cummings* v. *N. Bank,* 101 U. S. 154; *Pandexter* v *Greenhow,* 114 U. S. 270.

Hence it was fairly the duty of the petitioner to do this, and not having established the invalidity of the law in that way it ought not to be allowed to assert it now.

The notice to the defendant from the treasurer of the petitioner was not sufficiently definite. *Telegraph Co.* v. *Alabama,* 132 U. S. 477; *Rotterdam* y. *Telegraph Co.,* 127 U. S. 411.

The opinion of the Court was delivered by

POWERS, J.    Two questions have been argued before us:

1st.    Whether the monthly payments of rent due under the modified lease draw interest from the last day of the month on which it is claimed they mature, and

2nd. Whether the petitionee is liable to the petitioner for the unpaid rents withheld to meet the taxes assessed upon the gross earnings of the Rutland Road.

By the terms of the original lease of the Rutland and Addison Railroads, made in 1870, the rent was payable semi-annually on the 20th days of January and July in each year. As part of the arrangement between the parties and as security for the payment of the stipulated rent, the trustees and managers of the Central and Canada roads gave to the Rutland an order upon the Cheshire road to pay to the Rutland, for the year 1871, a sum not exceeding $10,000 per month from the balances due in traffic accounts: And after that year, the sum of $20,000 per month from the same source: "Such payments to be made monthly in the due course of settlement between the roads now in pratice."

The due course of settlement then in practice between the Cheshire and Central and Canada roads was for the several roads constituting the line terminating in Boston to adjust and pay the monthly balances, as soon as practicable, at the end of each month's business; under this practice the balance due from the Cheshire to the Canada and Central would not be struck until about the 25th of the succeeding month.

A clause in the original lease, after reciting the giving of the order aforesaid upon the Cheshire, provided that all moneys received by the Rutland upon such order should be applied to the payment of rent due under the lease, free from any claim for interest.

As the contract then stood between the parties to the lease, it is clear that the clause providing that the sums paid monthly by the Cheshire, which the Rutland was to apply to the payment of its rent free from all claim for interest, was inserted for the benefit of the Rutland. The rent its due was only payable semi-annually; the balances due under the Cheshire order were to be

received by the Rutland monthly. The balances were to be applied in payment of rent. Thus in fact a considerable part of each half-year's rent would be received by the Rutland before such half-year's rent was due. Nobody could thus be chargeable with interest except the Rutland, by reason of the advance payment of its rent.

On Feb. 25, 1876, the original lease in force between the parties was in certain respects modified. The rent, which under the original contract was payable semi-annually, was made payable in equal monthly instalments and on the last day of each month. The basis for ascertaining the amount of rent payable was fixed, and the Cheshire order was by the modified contract to "stand as a continuing security for the payment of the rents herein stipulated to be paid." A clause in the modified contract also provided in substance that the Cheshire order should be paid practically as it had been under the original lease, and in fact the balances under it have been paid to the Rutland about the 25th of the month following the month in which such balances were earned.

The petitioner now seeks to recover interest upon these deferred payments.

As already seen, the rent under the modified contract was payable monthly and on the last day of the month. A day certain was fixed for its payment. If not paid when due it is clear that interest would be chargeable upon it until it was paid.

The Chesire order was not accepted as a payment of rent, but as collateral security for its payment. The lessees owed the month's rent on the last day of each successive month without regard to the fact that anything was or was not to be realized from the "continuing security" afforded by the Cheshire order.

Under the original contract, the Rutland, by way of the Cheshire order, received its rent before it was due, and had the right to apply the amount so received without accounting for interest. Under the modified contract the rent has not been paid

when due and no clause in the modified contract says anything respecting interest upon payments made under said order or otherwise. The clause in the original contract providing for the application of the proceeds of the Cheshire order to the payment of rent, free from any claim for interest, related to the advance payments which the Rutland then received.

Under the modified contract the clause, which was inserted in the original contract for the purpose of protecting the Rutland from a liability, cannot now be used to protect the other contracting party from a like liability. But the modified contract making no reference to it at all, the clause has ceased to be operative for any purpose, and the basis upon which the rent is payable has been so changed as to make it inapplicable.

The petitioner is entitled therefore to interest upon the deferred payments of monthly rent from the last day of each month when such payments respectively matured.

The defendants have retained a considerable sum from the rents payable to the Rutland and paid the same to the State as taxes assessed under the Acts of 1882 and 1884 upon the gross earnings of the Rutland road while in defendants' possession.

The Rutland company contends that the State law referred to, so far as it seeks to impose a tax upon the earnings derived from interstate commerce, and a very large proportion of the earnings referred to, were of this character, is unconstitutional, and that the defendants were not justified in paying the taxes assessed upon them. That all transportation of freights and persons from points without to points within the State, or from points within to points without the State, as well as from points without through the State to points without, is commerce between the States, is abundantly settled both upon principle and upon authority. *Fargo* v. *Michigan*, 121 U. S. 230.

All agree that interstate commerce is not the subject of State regulation, and the cases are uniform in holding that a tax upon such commerce is a regulation within the inhibition of the

Federal constitution. *Fargo* v. *Michigan, supra ; Philadelphia Steamship Co.,* v. *Pennsylvania,* 122 U. S. 326, and cases there cited. All agree that the decisions of the highest Federal Court are binding upon this Court when Federal questions are involved, and that the only enquiry open to us, touching the validity of the tax now in question, so far as it lays hand upon the earnings derived from interstate commerce, is, what is the declared doctrine of the United States Supreme Court upon the subject.

That the course of decision in that court upon this and analogous subjects has not been entirely uniform, the diligence of counsel in this case has fully demonstrated. But the case last above cited is the latest decision of that court which has come to our attention, and so for the purposes of this case that decision must be accepted as the supreme law of the land.

Fortunately the facts of that case were quite like those of the case at bar. There, as here, the State of Pennsylvania had levied upon the gross receipts of a corporation chartered by itself, and there, as here, such receipts were the product of interstate commerce. The court reviews the authorities and, through Mr. Justice Bradley, held that the Pennsylvania law was unconstitutional. It would serve no useful end to trace the line of reasoning adopted in this case, nor to attempt a reconciliation of this decision with earlier ones of the same court, claimed to be variant from it. We, as judges of a State Court, are bound by the very language of the Federal Constitution to accept the construction of any part of that Constitution made by the Supreme Court; and in this case the reasoning of that court seems to us to be entirely unanswerable. We hold therefore that our corporation tax law, so far as it seeks to tax the earnings derived from interstate commerce is unconstitutional, as it interferes with that commerce, the regulation of which is within the exclusive control of Congress.

It is further contended that our law also violates another clause of the Federal Constitution, in that it impairs the obligation of the contract subsisting between the parties respecting the pay-

ment of rent, by requiring the lessee to pay the tax and deduct the same from the stipulated rent, and the case of . *Murray* v. *Charleston,* 96 U. S. 432 is relied upon as supporting this contention.

It is quite true that some of the language of Justice Strong in the opinion in that case gives some color to the contention now made. But this language is to be construed with reference to the case then in hand. In that case the City of Charleston was owing a non-resident creditor a debt bearing interest. Under a law of the State, the City passed an ordinance directing its officers to deduct from the interest payable upon the debt a certain sum as a tax upon the debt. The question was, could the City do this ? And the Court held that it could not, as it thereby would impair the obligation of a contract. It is to be noticed that the City had no right to tax the creditor at all. He was a non-resident, and the debt had its situs in the place of his domicile, and not in Charleston. If the creditor had resided in Charleston and thus had been within the jurisdiction for purposes of taxation, there could be no doubt that the City could have properly taxed him upon the indebtedness. The only question which could then arise would be as to the propriety of the method adopted for the collection of the tax. But in the case at bar both the Rutland and the Central, and the rent due from the Central to the Rutland are proper subject-matter for taxation under our law. The case then is clearly distinguishable in its facts from *Murray* v. *Charleston, supra,* and we think the method prescribed for the collection of the tax is no impairment of the contract to pay the rent due under the lease. In *Osborn* v. *Nicholson,* 13 Wall. 654, the court say: All contracts are inherently subject to the paramount power of the Sovereign, and the exercise of that power is never understood to involve their violation, and it is not within that provision of the National Constitution which forbids a State to pass laws impairing their obligation. The power acts upon the property which is the sub-

ject of the contract and not upon the contract itself. To the same effect see *West River Bridge Co.* v. *Dix*, 6 How. 532.

When therefore the parties made the lease whereby the Central undertook to pay a stipulated rent to the Rutland both made their contract with notice of, and in subordination to the right of the State to exact from the fruits of their contract by way of taxation such sum as it might properly collect for public purposes. Having then the right to levy the tax the method to be adopted for its collection is purely a question of legislative discretion with which the court has no power to interfere so long as no legal or constitutional rights are disturbed. The whole power of taxation under our system of government is lodged in the Legislature subject only to constitutional limitations. What subjects matter shall be selected, what amounts shall be assessed, and the methods of assessment and collection of taxes are solely questions for the Legislature to determine. If in any respect the constitutional rights of the taxpayer are involved, he has his remedy, but beyond this the legislative power cannot be questioned. In this case the law itself made the assessment. This has been held to be no impairment of the taxpayer's rights. *Sav. Bank* v. *U. S.*, 19 Wall. 227.

We have a statute by which a collector may collect a tax by the trustee process. In the case of non-residents taxes assessed upon national bank shares of stock are paid by the cashier and deducted from the dividends declared upon such shares. The same method is adopted in the case of other corporations. In the case *St. Albans* v. *Nat. Car Co.*, 57 Vt. 68, our statute R. L. sec. 284 providing that taxes assessed upon the stock of non-resident stockholders in a corporation shall be paid by the corporation, and the corporation shall have a lien upon the stock and its dividends as security and may deduct the taxes paid from dividends declared, is held constitutional. Taxes must necessarily be collected by summary methods, and we see no reason why the Legislature could not direct the Central to retain and pay over to the

State from funds in its hands belonging to the Rutland, all taxes which might be assessed against the Rutland. The contract to pay rent is not impaired because it was made subject to just that kind of impairment, and so the Rutland gets all under it that it can legally claim.

We hold therefore that Sec. 14 of our corporation tax law is not unconstitutional in respect to the method prescribed for the collection of taxes assessed upon the earnings of railroads operated by lessees.

But it by no means follows because the defendant has paid to the State taxes under a law afterwards held to be void, by withholding the amount thereof from the rent that the Rutland can now claim the balance of its rent unpaid for this reason.

Down to May 27, 1887, the date on which the decision of the Court in the 122 U. S. above cited was promulgated, the doctrine of the cases decided by the Supreme Court upheld the constitutionality of the taxation in question. *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Minot* v. *P. W. & B. R. R. Co.,* 18 Wall. 206, and the numerous cases cited in the defendant's brief. Accordingly all payments theretofore made were, so far as the validity of the tax was involved, payments made in obedience to law. It is an elementary principle that a contract valid under an existing law and payments made upon it will not be invalidated by subsequent legislation or subsequent judicial interpretation of the law. The decision of a Court of competent jurisdiction upholding the validity of an existing law, validates everything done under it, so long as such adjudication remains unchanged. *Gelpcke* v. *City of Dubuque,* 1 Wall. 175; *Havemeyer* v. *Iowa County,* 3 Wall. 294; *Cass Co.* v. *Johnston,* 95 U. S. 360; *Douglass* v. *Pike Co.,* 101 U. S. 679; 16 How. 432; 19 Wall. 677.

As said in *Gelpcke* v. *Dubuque,* 1 Wall. 175 : " The sound and true rule is that if the contract when made was valid by the laws of the State as then expounded by all departments of the

government and administered in its Courts of justice, its validity and obligation cannot be impaired by any subsequent action of the legislature, or decision of its Courts altering the construction of the law.

The same principle applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law."

Affirmed in *Haveymer* v. *Iowa County*, 3 Wall. 294.

And in *Douglas* v. *Pike Co.*, 101 U. S. 677: "The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to legislative amendment, that is to say, make it prospective, but not retro-active.

After a statue has been settled by judicial construction the construction becomes so far as contract rights acquired under it are concerned as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment."

And in *Lyon* v. *Richmond*, 2 Johns. Chan. 51: "Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind, and to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of a like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society there is no such pernicious precedent to be found. This case therefore is to be decided according to the existing state of things when the settlement in question took place."

Suppose this Court should hold to-day that our tax law is valid, and a year hence should reverse its decision, and hold it invalid? would it be seriously claimed that rights gained and

liabilities assumed meantime would be upset? No such rule of law could be tolerated for a moment.

The Supreme Court of the United States is the Supreme arbiter when a federal question is involved. Down to 1887 that Court had ruled the federal question now under consideration in a way that upheld the legislation in question. Its decisions then promulgated were the supreme law of the land, absolutely binding upon both parties to this cause. Hence all payment of taxes made under our law, which down to that time must be treated as valid for present purposes, were made in strict conformity to law.

The subsequent change in the decisions of the U. S. Supreme Court is only operative prospectively, and all acts done in obedience to the former decisions are valid and cannot be disturbed.

Again, the taxes in question were taxes which, as between these parties it was the duty of the Rutland company to pay.

Under the original as well as the modified lease no provision for the payment of taxes was made. The lease being silent, the duty to pay, under the common law rested upon the lessor. *Taylor's Land. & Tenant*, sec. 341, 395. Morever the precise question arose between these parties and was decided by this Court at the January term, 1878, in Rutland County. In that case certain taxes had been assessed upon the Rutland road under the provisions of the acts of 1874 and 1876, taxing the real estate of railroad corporations. The defendants then as now operating the road under the lease aforesaid, declined to pay these taxes. Whereupon the Rutland Co. brought its petition to the Court of Chancery, praying, among other things that the lease and the modification of the same in force between the parties "May be construed and the rights and liabilities of the parties thereunder may be determined touching their duty and obligation or the duty and obligation of either to pay said taxes so assessed as aforesaid, as well as all future taxes that may be

assessed on the real estate of your orator and said trustees and managers."

The case was fully argued and fell to Chief Justice Pierpoint, who prepared no opinion, but the mandate declared that " The defendant is not liable to pay taxes assessed upon the property of the Rutland Railroad Co."

It is clear that if the taxes in question upon the gross earnings of the Rutland road are a tax " upon the property of the Rutland Railroad Co." the case just cited is applicable to the case in hand.

The tax is not a franchise tax, as it is levied indiscriminately upon the earnings of all railroads operated in the State, irrespective of the source of their chartered power. *Phil. S. S. Co.* v. *Pennsylvania, supra.* It is in terms a tax upon the earnings of railroads rated by the mile. It is not a tax upon the company which operates a railroad, nor upon the income received by such company, but upon the fares and freights which come from the operation of the particular road. The object of the legislature was to make each railroad in the State, *as a railroad,* contribute to the public treasury its proper share of the burdens of taxation. Under the act of 1874 the plan of treating railroads as real estate was adopted as the basis of a scheme of taxation. This act not proving acceptable, in 1882 the plan was adopted of graduating the taxation upon the basis of earnings. In both cases the tangible thing upon which the State laid its hand was the railroad itself, and unless we substitute the shadow for the substance, the thing taxed under the act of 1882 was " the property of the Rutland R. R. Co."

That the tax in question was a tax which the Rutland R. R. Co. should pay is clearly seen by reference to the act itself. Sec. II provides that every corporation, person or persons owning or operating a railroad in this State, whether as owner, lessee, receiver, trustee, or otherwise, should pay a tax to the State on the entire gross earnings of such railroad, &c.

The *thing* taxed was, then, the gross earnings of somebody's *railroad.* Who that somebody is can be learned from the 14th section. When a railroad is operated in this State by a corporation, person, or persons, by virtue of a lease, or other contract, the aforesaid tax shall be paid by the lessee of *such* railroad or holder of such contract, as the case may be ; and the said tax shall be charged against and deducted from any payment due, or to become due the lessor of *such* railroad  *  *  *  on account of such lease or contract.

Now, then, when the act directs the Central to pay the tax and charge it against and deduct it from the rent due the Rutland, it makes the Rutland *in fact* the taxpayer instead of the Central. The Central is the mere collector of the tax, the Rutland, the lessor, in the lease of its road, is the party *actually assessed,* and if the Rutland is the *taxpayer* aimed at by the law, it must be the *property* of the Rutland that is assessed. The law reaches the property of the taxpayer it selects as the party liable for the tax.

It is not exactly sound to say that the Rutland has no gross earnings, because it has rented its road, and under the contract the earnings go to the defendants. Under the modified lease, the rent is made up from gross earnings. The defendants agree to pay a rent ascertained in a specified manner from the gross earnings of the Rutland road upon a basis fixed in the contract.

The defendants stipulate that the gross earnings shall equal at least the sum of $250,000. It is true a hotch-pot of the earnings of the Rutland, Addison, Canada, and Central roads is made, still by contract between the parties 36¼ per cent of the aggregate earnings of all said roads is set apart as an arbitrary, fixed, liquidated share of the whole earnings properly belonging to the Rutland and Addison roads.

These roads then have earnings within the purview of the tax law, as much so as the Canada and Central, and it was the earnings, *eo nomine* that the legislature designated as the subject

to be taxed, irrespective of the question whether A. or B. was entitled to pocket such earnings.

It being therefore the duty of the Rutland to pay the taxes in question, the defendants have been compelled by law to discharge an obligation belonging to another. In such case the law implies the request and the defendants would have ·an action to recover back such payments. But a court of equity will avoid a circuity of action wherever it is practicable to do so.

The notice given by Dr. Mead, the treasurer of the Rutland road, by letter dated Sept. 19, 1883, does not help the petitioner. The Rutland Co. then knew that the defendants were paying these taxes and deducting the amount from the current rent. The Rutland company simply say, that it claims the tax to be invalid. No suggestion or hint is made as to the ground of the invalidity. Much less that the law was unconstitutional. Indeed at that date, so far as any light had been thrown upon that question by the Supreme Court, the law stood as a valid law. If the defendant declined to pay the taxes, they subjected themselves to heavy penalties. The Rutland Co. made no offer to indemnify the defendants, and, as prudent men, the defendants could not do otherwise than pay.

They were under no duty to incur the expense and assume the perils of delay and of litigation to test the validity of a law passed by the legislature, and which they had the right to assume was constitutional.

The petitioner comes into a Court of Equity to obtain the relief prayed for. It must do equity. It can only do equity by leaving the defendants where for the greater part of the time the law has left them, and where for the whole time they have been doing what as between the parties, the petitioner should have done, and what by its own laches the petitioner has suffered them to do, professedly in its behalf.

Accordingly the defendants are not liable to pay as rent the

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

amount paid by them as taxes upon the earnings of the Rutland road.

The decree is reversed, and the cause remanded with mandate.

Ross, J., dissents.

Dissenting opinion by

ROSS, J. I concur in the views of the majority of the Court on the question of interest, but disagree, with reference to the construction to be placed upon ss. 1,11,12, 13 and 14 of No. 1 of the Acts of 1882. These contain the entire provisions of the act relative to taxing railroads. In determining upon the proper construction to be given to these sections, all their provision must be considered. If Sec. II, stood alone, I should say, that the tax is imposed upon the entire gross earnings received by a corporation or person, from the operation of a railroad within this State. Its language seems to demand such construction. The first part of the opinion of the majority of the court assumes that this is the construction to be placed upon the Act, and therefore holds, the tax, so far as derived from interstate commerce, void. On this construction, they justly hold that that part of the tax assessed upon the earnings derived from interstate commerce, is unconstitutional, and void in accordance with the decision of the United States Supreme Court in *Steamship Co.* v. *Pennsylvania*, 122 U. S. 326. If a tax upon the entire gross earnings, it must rest upon the party to whom such earnings belong. In that case, under the lease by the orator to the defendant, I think, the tax would clearly fall upon the defendant; and the payment of the tax by defendant, would only pay its debt to the State, and would pay no part of the rent due from it to the orator. Under the lease, I think, the defendant alone is entitled to, and owns the entire gross earnings derived by it from operating the railroad of the orator. I do not think the reference in

the lease to the gross earnings for the purpose of fixing the amount of the rent, makes any part of the gross earnings, as such, the property of the orator. Such earnings were not made the property of the orator, nor was the defendant under obligation to turn such earnings over to the orator in payment of the rent due it. The rent was to be paid in part by the order on the Cheshire Railroad Co. What was not thus paid the defendant could pay out of any funds which it could control. The orator, I think, had no gross earnings. Its income derived from the rent fixed by the lease, was not gross earnings within the contemplation of the statute. While it owned the road, road-bed and rolling stock, it did not operate them. Hence, if this section were the whole of the law applicable to the taxation of this class of property, I should hold that the tax, whether valid or invalid rested upon the defendant's property, and such payment gave the defendant no relief from paying the full amount of the rent stipulated in the lease. But this section does not contain the whole law relating to this subject. Sections 12 and 13 of the act need not be considered. They relate to the mode of ascertaining the amount of the tax per mile of the road operated in this State, and to the times when the tax is required to be paid.

In ascertaining the intention of the legislature, section 14 of the act must be considered. That section provides that, when a railroad is operated under a lease or contract, by some party other than its owner, the tax shall be paid by such other party, but for the owner of the railroad. It proceeds upon the basis that the tax, in all cases, is upon the property of the railroad, and to be paid by its owner. When, therefore, the railroad and rolling stock of a company are operated by a lessee, or contractee, for his own benefit, and when the gross earnings derived from operating the property belong, by the terms of the lease, or contract, to the operator, the tax rests, not upon the gross earnings, *in specie*, but upon the railroad, rolling stock and right to operate them, valued upon the basis of the gross earnings per mile

derived therefrom. By both sections 11 and 14 the tax is made to rest upon property. I do not think that the act should be so construed as to make the tax rest upon the property of the lessor or contractor, the railroad, rolling stock and right to operate them, when operated under a lease or contract, and upon the gross earnings derived therefrom when operated by the owner. The act should be so construed that the tax will rest uniformly upon all such property by whomsoever operated. This result can be reached only by construing the act as I have done.

Turning now to section one of the act, we find the same idea expressed. The tax there is denominated a tax upon the corporate franchise or business in this State of a railroad. The most valuable franchise, and pretty much the only ones of pecuniary value, are the rights conferred by the State on such corporations, to locate, build, maintain, own and operate a railroad with its rolling stock in this State. Every railroad in the State holds these franchises from the State. Here it is declared that the tax is upon the franchise. When " or business in this State " is added, it suggests that the franchise is to be valued upon the basis of the earnings received from the operation of the property. On this construction section 11 of the act declares that the value of the railroad, rolling stock, and right to operate them, in this State, is, for the purpose of taxation, to be determined by the gross earnings derived from such operation thereof per mile, within this State. Section 12 rates the tax upon the property or franchise so valued, and section 13 declares when the tax shall be paid. This construction makes all the provisions of the act on this subject harmonious, renders the tax a tax upon the property, or franchise to be paid by the owner of the property or franchise, and avoids all constitutional objections. I do not find anything in *Steamship Co.* v. *Pennsylvania*, *supra*, nor in any of the decisions there referred to and commented upon, which militates against this construction of this act. In the State Freight Tax case, 15 Wall. 232 to 282 (L. C. 21,160) Justice

Strong says : " Before proceeding, however, to a consideration of the direct question whether the statute is in direct conflict with any provision of the Constitution of the United States, it is necessary to have a clear apprehension of the subject and nature of the tax imposed by it. It has repeatedly been held that the constitutionality or unconstitutionality of a State tax is to be determined, not by the form or agency through which it is to be collected, but by the subject upon which the burden is laid. This was decided in the cases of *Bank of Commerce* v. *New York*, 2 Black 620 ; in the Bank Tax case, 2 Wall. 200 ; *Society for Savings* v. *Coite*, 6 Wall. 594; and *Providence I. Institution* v. *Mass.*, 6 Wall. 611. In all these cases it appeared that the bank was required by the statute to pay the tax, but the decision turned upon the questions : what was the subject of the tax; upon what did the burden really rest, not upon the question from whom the State exacted payment into its treasury. Hence, where it appeared that the ultimate burden rested upon the property of the bank invested in United States securities, it was held unconstitutional, but where it rested upon the franchise of the bank, it was sustained." I understand the principle thus announced is unquestioned. My associates make this a tax upon the gross earnings, in the first part of the opinion, and then by some process of reasoning, of which I fail to see the force or conclusiveness, hold that it is a tax upon the orator, analogous to the tax imposed upon the orator's road-bed, per mile, under the acts of 1874 and 1876, and decided by this court in Rutland County but unreported, and which method of taxation this took the place of. They also hold, as I understand the opinion, that the gross earnings derived from the operation of the orator's railroad and property by the defendant, belong to the defendant, and yet that the tax rests upon the orator. I am unable to understand in what way that result can come about, unless the tax rests upon the orator's road-bed, rolling stock and right to operate them valued

Rutland Railroad Co. *v.* Central Vermont Railroad Co. et al.

upon the basis of the gross earnings derived per mile from its operation in this State by the defendants. When the tax is made to rest upon the orator, who has no gross earnings, within the meaning of the act, it falls within the principle announced and quoted from the opinion of Justice Strong, in the State Freight Tax case, and is not unconstitutional. The burden of the tax, on the views of my associates, rests upon the orator. As the orator derives no gross earnings from its railroad, the tax, it seems to me, must either rest upon the railroad property or franchises of the orator. It must rest upon what the orator has and enjoys, and not upon what it does not own and is not entitled to. While I agree in the result reached by the majority of the court, I dissent from the method of reaching it and from holding the act unconstitutional.