# FARGO *v.* MICHIGAN.

## ERROR TO THE SUPREME COURT OF MICHIGAN.

Submitted December 9, 1886. — Decided April 4, 1887.

A state statute which levies a tax upon the gross receipts of railroads for the carriage of freights and passengers into, out of, or through the state, is a tax upon commerce among the states, and therefore void.

While a state may tax the money actually within the State, after it has passed beyond the stage of compensation for carrying persons or property, as it may tax other money or property within its limits, a tax upon receipts for this class of carriage specifically is a tax upon the commerce out of which it arises, and, if that be interstate commerce, it is void under the Constitution.

The States cannot be permitted, under the guise of a tax upon business transacted within their borders, to impose a burden upon commerce among the States, when the business so taxed is itself interstate commerce.

THIS was a writ of error to the Supreme Court of the State of Michigan to bring here for review a decree sustaining a demurrer to the complainant's bill in chancery, and dismissing the bill. The complainant brought suit as President of the Merchants' Dispatch Transportation Company, averring that said company was a joint stock association, organized and existing under the laws of the State of New York, and by the

laws of that state authorized to sue in the name of its president. The bill, so far as it presented the questions on which this court can have jurisdiction, charged as follows:

"*Second.* That, during the year ending with the 31st day of December, A.D. 1883, the said transportation company was engaged in the business of soliciting and contracting for the transportation of freight required to be carried over connecting lines of railroad in order to reach its destination, and, for the prosecution of its said business, it had agencies located generally throughout the United States and the Dominion of Canada; the said transportation company issued through bills of lading for such freight, and caused the same to be carried by the appropriate railroad companies, and, as compensation for its service in the premises, the said transportation company was paid by the said railroad companies a definite proportion of the through rate charged and collected by said companies for the carriage of said freights.

"*Third.* That during the said year the said transportation company was possessed of certain freight cars which were use and run by the railroad companies in whose possession they chanced from time to time to be for the transportation upon their own and connecting lines of railroad of through freight, principally between the city of New York, in the state of New York, and Boston, in the state of Massachusetts, and Chicago, in the state of Illinois, and other points and commercial centres in the west, northwest and southwest, without the said state of Michigan; that said cars were not used for the carriage of freight between points situate within the said state of Michigan, but wholly for the transportation of freight, either passing through the state or originating at points without said state and destined to points within, or originating at points within said state and destined to points without; that the said several railroad companies thus making use of said cars during the said year paid to the said transportation company as compensation therefor a definite sum per mile for the distance travelled by the said cars over their respective lines.

"*Fourth.* That the said transportation company during

the said year was not running or interested in any special fast, through, or other stock, coal or refrigerator-car freight line, or doing business in or running cars over any of the railroads of said state of Michigan otherwise than as in the preceding paragraphs stated.

"*Fifth.* That prior to the first day of April, A. D. 1884, the Commissioner of Railroads of the state of Michigan transmitted to the said transportation company certain blank forms of a report to be made to him pursuant to the provisions of an act of the legislature of the state of Michigan approved June 5, 1883, entitled 'An Act to provide for the taxation of persons, copartnerships, associations, car-loaning companies and fast freight lines engaged in the business of running cars over any of the railroads of this state, and not being exclusively the property of any railroad company paying taxes on their gross receipts,' with the requirement that the said transportation company should make up and return said report to the office of said commissioner on or before the first day of April, 1884, under the penalties of said act; that on or about said first day of April, in compliance with said demand, but protesting that the same was without authority of law, and that said act was invalid — or, if valid, was not applicable to the said transportation company — the said transportation company made and filed with said commissioner a report, duly verified, setting forth that the gross amount of the receipts of the said transportation company for the mileage of said cars during said year 1883, while in use in the transportation of freight between points without said state and passing through said state in transit, estimated and pro-rated according to the mileage of said cars within said state of Michigan while so in use, was the sum of $95,714.50; and while in the use of transportation of freight from points without to points within said state of Michigan, and from points within to points without said state, estimated and pro-rated according to the mileage of said cars within the state of Michigan while so in use, was the sum of $28,890.01, making in the aggregate the sum of $124,604.51; that during said year it received no moneys whatever on business done solely

within the state of Michigan, and no moneys which were or could be regarded as earned during said year within the limits of said state of Michigan other than as hereinbefore and in said report set forth.

"*Sixth.* That by the terms of said act it is the duty of said Commissioner of Railroads to make and file with the Auditor General of said state of Michigan, prior to the first day of June each year, a computation based upon the report of each person, association, copartnership or corporation taxable thereunder of the amount of tax to-become due from them respectively, and each such person, association, copartnership or corporation is required on or before the first day of July in such year to pay to the Treasurer of said state of Michigan upon the statement of the Auditor General thereof two and one-half per cent. upon its gross receipts as computed by the said Commissioner of Railroads and derived from loaning, renting or hiring of cars to any railroad or other corporation, association, copartnership or party. It was also provided in said act that for the said taxes and interest thereon, and the penalty imposed for delay in the payment thereof, the said state should have a lien upon all the property of the person, association, copartnership or corporation so taxed, and in default of the payment of said tax by and within the time so prescribed the Auditor General of said state was authorized to issue his warrant to the sheriff of any county in said state, commanding him to levy the same, together with ten per cent. for his fees, by distress and sale of any of the property of the corporation or party neglecting or refusing to pay such tax wherever the same may be found within the county or state.

"*Seventh.* That the said Commissioner of Railroads has computed and determined that the amount of the gross receipts of the said transportation company under the said act is the said sum of $28,890.01, and that there is due from said transportation company to the state of Michigan, as a tax thereon, the sum of $722.25, and has transmitted said computation to the said Auditor General, and your orator shows that unless said tax is paid by the said transportation company on or be-

fore the first day of July, 1884, it will become the duty of the said Auditor General under the said act—and the said Auditor General threatens that he will proceed to enforce payment of the said tax against said transportation company by the seizure and sale of the property of said transportation company under the provisions of said act.

"*Eighth.* That your orator is advised and so charges, that the said act as to the said gross receipts of the said transportation company, or of any of its receipts or earnings from the use of its cars, within the state of Michigan, and the transaction of its business in the manner aforesaid, is in violation of the Constitution of the United States and void, and that said act is inapplicable to the said transportation company, and inoperative for further reasons appearing upon its face, and that said transportation company is not amenable thereto.

"*Ninth.* That the chief officers of the said transportation company for the transaction of corporate business was, during said year, and is in the city of New York, in the state of New York, and that all the moneys earned by it, as set forth in the second and third paragraphs hereof, were paid to it at its said office; that said company during said year had no funds or property whatsoever within the state of Michigan, except cars in transit and office furniture in the possession of agents, and that during said year the said transportation company was subject to taxation and was taxed on account of its property and earnings within and under the laws of the state of New York."

The bill then prayed for a subpoena against William C. Stevens, Auditor General of the State of Michigan, and for an injunction to prevent him from proceeding in the collection of said taxes. To this bill the defendant Stevens demurred, and the Circuit Court for the county of Washtenaw, in which this suit was brought, overruled that demurrer. From this decree the defendant appealed to the Supreme Court of the state, where the judgment of the lower court was reversed, the demurrer sustained, and the bill dismissed. To reverse that decree this writ of error was sued out.

*Mr. Ashley Pond* for plaintiff in error.

*Mr. Moses Taggart,* Attorney General of Michigan, and *Mr. Edward Bacon* for defendant in error.

This court has discretionary power to decide this case as any reason deemed sufficient may require. The tax in question is valid for the following reasons.

I. The tax is on business done in the exercise of corporate franchises, introduced by permission of the state of Michigan. The tax is on such business done by means of the complainant's permanently established local agents and offices in Michigan, with every facility for carrying on business between places within the state, whenever profitable. The tax is necessary to the safety of the state's revenue from railroad companies and express companies. The tax is upon railroad business so affecting and controlling public interests of the people of the state of Michigan that such business ought not to escape taxation in the state.

II. The opinion of the Supreme Court of Michigan in this suit states a claim by the complainant's counsel that the tax in question is void if it is laid "upon the gross earnings of the company within the state, as specific property, because the earnings or assets are not within the jurisdiction of the state." Here is presented a statement of a matter of fact — the place of the earnings. The complainant ought not to escape taxation in Michigan merely because the final receipt of its earnings in Michigan was at its chief office in the city of New York. The business, by which all right to such earnings accrued, was completed within the state of Michigan, and, according to the ordinary course of such business, any suit to collect such earnings must be brought in Michigan, where the contracts therefor were made and fulfilled. And, according to the ordinary course of such business, the payments of the freight charges, in which the complainant was part owner, were made in Michigan, although the railroad companies or other common carriers may have carried the money to New York before final division thereof, and the real collec-

tion of the earnings in Michigan was in Michigan continuously. *Railroad Co.* v. *Collector*, 100 U. S. 595, 598; *United States* v. *Erie Railway Co.*, 106 U. S. 327, 330.

If final receipt at the home office in New York, of earnings in Michigan, must deprive the latter state of all power to tax such earnings, then all insurance companies and express companies can claim for their earnings in Michigan, immunity from taxation there, if such earnings be not finally receipted for until they arrive in a foreign state. If the Supreme Court of Michigan has decided that the claim of the complainant's counsel was wrong, and that the earnings in question were taxable in Michigan, where they were bargained for and collected, it is difficult to understand what statutory or constitutional provision of the United States was thereby infringed upon. The transcript certainly specifies none so infringed upon. And it is difficult to understand why the decision of the Supreme Court of Michigan, on this matter shall not be final.

III. If the plaintiff could use, in Michigan, its located agencies, its corporate franchises, or its control of the freighting business, so that the Supreme Court of Michigan might in this case rightfully adjudge that the complainant's business was taxable there, then the adjudication of such Supreme Court in this suit, that such business was so taxable, is final, and no Federal question is of any importance in this suit.

In *Murdoch* v. *City of Memphis*, 20 Wall. 590, it is said at p. 636, " If it " [the Federal question] " was erroneously decided against plaintiff in error, then this court must further inquire whether there is any other· matter or issue adjudged by the state court, which is sufficiently broad to maintain the judgment of that court, notwithstanding the error in deciding the issue raised by the Federal question. If this is found to be the case, the judgment must be affirmed without inquiring into the soundness of the decision on such other matter or issue." *Bonaparte* v. *Tax Court*, 104 U. S. 592, 595. *Norton* v. *Shelby County*, 118 U. S. 425 ; *Erie Railway* v. *Pennsylvania*, 21 Wall. 492, 497.

IV. No Federal question, not duly specified by the record,

in or prior to the decree of the court below, can be considered. *Maxwell* v. *Newbold*, 18 How. 511.

If this claim for immunity is to be successful, then there will be nothing to hinder any person or corporation in New York from having like immunity–from taxation for all receipts from any kind of business carried on in Michigan, if collections be made through a joint owner or partner there, but the final division of such receipts shall be in New York. *Messenger* v. *Mason*, 10 Wall. 507, 509; *Simmerman* v. *Nebraska*, 116 U. S. 54.

The complainant must be deemed a corporation exercising, in its business, corporate franchises introduced by permission of the state of Michigan. Lindley on Partnership, Ewell's ed., Chicago, 1881, Vol. 2, pp. 1087–8–9, giving copies of relevant N. Y. Statutes and Articles of Constitution. *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566, 574; *Westcott* v. *Fargo*, 61 N. Y. 542; *Fargo* v. *Louisville, New Albany & Chicago Railway*, 6 Fed. Rep. 787; *Waterbury* v. *Merchants' Union Express Co.*, 50 Barb. 157; *Sandford* v. *Supervisors*, 15 How. Pr. 172; *Habicht* v. *Pemberton*, 4 Sandford (N. Y.) 657; *United States Express Co.* v. *Bedbury*, 34 Ill. 459.

MR. JUSTICE MILLER, after stating the case as above reported, delivered the opinion of the court.

The contention of the plaintiff in error is, that the statute of Michigan, the material parts of which are recited in the bill, is void as a regulation of commerce among the states, which, by the Constitution of the United States, is confided exclusively to Congress. Art. 1, § 8, clause 3. It will be observed that the bill shows that the tax finally assessed by the auditor of state against the transportation company was for the $28,890.01 of the gross receipts which the company had returned to the commissioner as money received for the transportation of freight from points without to points within the state of Michigan, and from points within to points without that state, and that no tax was assessed on the $95,714.50 received for transportation, passing entirely through the state to and from other states.

There is nothing in the opinion of the Supreme Court of the state, which is found in the transcript of the record, to explain this discrimination. There is nothing in the statute of the state on which this tax rests which makes such a distinction, nor is there anything in the commissioner's requirement for a report which suggests it. It must have been, therefore, upon some idea of the authorities of the state that the one was interstate commerce and the other was not, which we are at a loss to comprehend. Freight carried from a point without the state to some point within the state of Michigan as the end of its voyage, and freight carried from some point within that state to other states, is as much commerce among the states as that which passes entirely through the state from its point of original shipment to its destination. This is clearly stated and decided in the case of *The Reading Railroad Co.* v. *Pennsylvania,* commonly called the *Case of the State Freight Tax,* 15 Wall. 232, in which it is held that a tax upon freight taken up within the state and carried out of it, or taken up without the state and brought within it, is a burden on interstate commerce, and therefore a violation of the constitutional provision that Congress shall have power to regulate commerce with foreign nations and among the several states. And in *Wabash Railway Co.* v. *Illinois,* 118 U. S. 557, it is held that a statute attempting to regulate the rates of compensation for transportation of freight from New York to Peoria, in the state of Illinois, or from Peoria to New York, is a regulation of commerce among the states. The same principle is established in *Crandall* v. *State of Nevada,* 6 Wall. 35.

The statute of the state of Michigan of 1883, under which this tax is imposed, is entitled "An act to provide for the taxation of persons, copartnerships, associations, car-loaning companies, corporations, and fast freight lines engaged in the business of running cars over any of the railroads of this state, and not being exclusively the property of any railroad company paying taxes on their gross receipts." Sections 1 and 2 require reports to be made to the Commissioner of Railroads of the gross amount of their receipts for freight earned within the limits of the state from all persons and corporations run-

ning railroad cars within the state. The commissioner is by §
4 required to make and file with the Auditor General, on the
first day of June of each year, a computation of the amount of
tax which would become due on the first day of July next
succeeding from each person, association, or corporation liable
to pay such taxes. Each one of these is by § 5 required to pay
to the State Treasurer, upon the statement of the Auditor
General, an annual tax of two and one-half per cent. upon its
gross receipts, as computed by the commissioner of railroads.

It will thus be seen that the act imposed a tax upon all the
gross receipts of the Merchants' Dispatch Transportation Com-
pany, a corporation under the laws of the state of New York,
and with its principal place of business in that state, on
account of goods transported by it in the state of Michigan;
and the bill states that the company carried no freight the
transportation of which was between points exclusively within
that state.

The subject of the attempts by the states to impose burdens
upon what has come to be known as interstate commerce or
traffic, and which is called in the Constitution of the United
States "commerce among the states," by statutes which en-
deavor to regulate the exercise of that commerce, as to the
mode by which it shall be conducted, or by the imposition of
taxes upon the articles of commerce, or upon the transporta-
tion of those articles, has been very much agitated of late
years. It has received the attentive consideration of this
court in many cases, and especially within the last five years,
and has occupied Congress for a time quite as long. The re-
cent act, approved February 4, 1887, entitled "An act to reg-
ulate commerce," passed after many years of effort in that
body, is evidence that Congress has at last undertaken a duty
imposed upon it by the Constitution of the United States, in
the declaration that it shall have power "to regulate com-
merce with foreign nations, and among the several states, and
with the Indian tribes." Congress has freely exercised this
power so far as relates to commerce with foreign nations and
with the Indian tribes but in regard to commerce among the
several states it has, until this act, refrained from the passage

of any very important regulation upon this subject, except perhaps the statutes regulating steamboats and their occupation upon the navigable waters of the country.

With reference to the utterances of this court until within a very short time past, as to what constitutes commerce among the several states, and also as to what enactments by the state legislatures are in violation of the constitutional provision on that subject, it may be admitted that the court has not always employed the same language, and that all of the judges of the court who have written opinions for it may not have meant precisely the same thing. Still we think the more recent opinions of the court have pretty clearly established principles upon that subject which can be readily applied to most cases requiring the construction of the constitutional provision, and that these recent decisions leave no room to doubt that the statute of Michigan, as interpreted by its Supreme Court in the present case, is forbidden as a regulation of commerce among the states, the power to make which is withheld from the state.

The whole question has been so fully considered in these decisions, and the cases themselves so carefully reviewed, that it would be doing little more than repeating the language of the arguments used in them to go over the ground again. The cases of the *State Freight Tax* and *State Tax on Railway Gross Receipts*, which were considered together and decided at the December term, 1872, and reported in 15 Wallace, pp. 232–328, present the points in the case now before us perhaps as clearly as any which have been before this court. A statute of the state of Pennsylvania imposed upon all the railroad corporations doing business within that state, as well as steamboat companies and others engaged in the carrying trade, a specific tax on each two thousand pounds of freight carried, graduated according to the articles transported. These were arranged into three classes, on the first of which a tax of two cents per ton was laid, upon the second three cents, and upon the third five cents. The Reading Railroad Company, a party to the suit, in making its report under this statute, divided its freight on which the tax was to be levied into two classes,

namely, freight transported between points within the state and freight which either passed from within the state out of it or from without the state into it. The Supreme Court of the state of Pennsylvania decided that all the freight carried without regard to its destination, was liable to the tax imposed by the statute. This court, however, held that freight carried entirely through the state from without, and the other class of freight brought into the state from without or carried from within to points without, all came under the description of " commerce among the States," within the meaning of the Constitution of the United States ; and it held also that freight transported from and to points exclusively within the limits of the state, was internal commerce and not commerce among the states. The taxing law of the state was, therefore, valid as to the latter class of transportation, but with regard to the others it was invalid, because it was interstate commerce and the state could lay no tax upon it. In that case which was very thoroughly argued and very fully considered, the case of *Crandall* v. *Nevada,* 6 Wall. 35, was cited as showing, in regard to transportation, what was strictly internal commerce of a state and what was interstate commerce. The court, said : " Nor is it at all material that the tax is levied upon all freight, as well that which is wholly internal as that embarked in interstate trade. We are not at this moment inquiring further than whether taxing goods carried because they *are* carried, is a regulation of carriage. The state may tax its internal commerce, but if an act to tax interstate or foreign commerce is unconstitutional, it is not cured by including in its provisions subjects within the domain of the state. Nor is a rule prescribed for carriage of goods through, out of, or into a state any the less a regulation of transportation because the same rule may be applied to carriage which is wholly internal. Doubtless a state may regulate its internal commerce as it pleases. If a state chooses to exact conditions for allowing the passage or carriage of persons or freight through it, into another state the nature of the exaction is not changed by adding to it similar conditions for allowing transportation wholly within the state." pp. 276, 277.

In the case of the *Erie Railway Company* (a corporation of the state of New York) v. *Pennsylvania*, 15 Wall. 282, decided at the same time, it appeared that the road of that company was constructed for a short distance through a part of the state of Pennsylvania, and that a similar tax was levied upon it for freight carried over its road. This was held to be invalid for the reasons given in the case of the Reading road.

In the other case of *State Tax on Railway Gross Receipts*, 15 Wall. 284, which was also a suit between the Reading Railway Company and the state of Pennsylvania, an act of the legislature of that state was relied on which declared that "In addition to the taxes now provided by law, every railroad, canal, and transportation company incorporated under the laws of this Commonwealth, and not liable to the tax upon income under existing laws, shall pay to the Commonwealth a tax of three-fourths of one per centum upon the gross receipts of said company; the said tax shall be paid semiannually upon the first days of July and January, commencing on the first day of July, 1866."

This tax was held to be valid. The grounds upon which it was distinguished from the one in the preceding case upon freight were, that the corporation, being a creation of the legislature of Pennsylvania and holding and enjoying all its franchises under the authority of that state, this was a tax upon the franchises which it derived from the state, and was for that reason within the power of the state, and that, in determining the mode in which the state could tax the franchises which it had conferred, it was not limited to a fixed sum upon the value of them, but it could be graduated by and proportioned to either the value of the privileges granted, or the extent or results of their exercise. "Very manifestly," said the court, "it is a tax upon the railroad company, measured in amount by the extent of its business, or the degree to which its franchise is exercised," p. 234. Another reason given for the distinction is that "the tax is not levied, and, indeed, such a tax cannot be, until the expiration of each half-year, and until the money received for freights, and from other sources of income, has actually come into the company's hands.

Then it has lost its distinctive character as freight earned, by having become incorporated into the general mass of the company's property. While it must be conceded that a tax upon interstate transportation is invalid, there seems to be no stronger reason for denying the power of a state to tax the fruits of such transportation after they have become intermingled with the general property of the carrier, than there is for denying her power to tax goods which have been imported, after their original packages have been broken, and after they have been mixed with the mass of personal property in the country." pp. 294, 295, citing *Brown* v. *Maryland*, 12 Wheat. 519.

The distinction between that case, which is mainly relied upon by the Supreme Court of Michigan in support of its decree, and the one which we now have before us, is very obvious, and is twofold: First. The corporation which was the subject of that taxation was a Pennsylvania corporation, having the *situs* of its business within the state which created it and endowed it with its franchises. Upon these franchises thus conferred by the state, it was asserted, the state had a right to levy a tax. Second. This tax was levied upon money in the treasury of the corporation, upon property within the limits of the state, which had passed beyond the stage of compensation for freight and had become like any other property or money liable to taxation by the state. The case before us has neither of these qualities. The corporation upon which this tax is levied is not a corporation of the state of Michigan, and has never been organized or acknowledged as a corporation of that state. The money which it received for freight carried within the state probably never was within the state, being paid to the company either at the beginning or the end of its route, and certainly at the time the tax was levied it was neither money nor property of the corporation within the state of Michigan.

The proposition that the states can, by way of a tax upon business transacted within their limits, or upon the franchises of corporations which they have chartered, regulate such business or the affairs of such corporations, has often been set up

as a defence to the allegation that the taxation was such an interference with commerce as violated the constitutional provision now under consideration. But where the business so taxed is commerce itself, and is commerce among the states or with foreign nations, the constitutional provision cannot thereby be evaded; nor can the states, by granting franchises to corporations engaged in the business of the transportation of persons or merchandise among them, which is itself interstate commerce, acquire the right to regulate that commerce, either by taxation or in any other way.

This is illustrated in the case of *Cook* v. *Pennsylvania*, 97 U. S. 566. The state of Pennsylvania, by her laws, had laid a tax upon the amount of sales of goods made by auctioneers, and had so modified and amended this class of taxes that in the end it remained a discriminating tax upon goods so sold imported from abroad. This court held that the tax which the auctioneer was required to pay into the treasury was a tax upon the goods sold, and as this tax was three-quarters of one per cent. upon foreign drugs, glass, earthenware, hides, marble work and dyewoods, that it was a tax upon the goods so described for the privilege of selling them at auction. The argument was made that this was a tax exclusively upon the business of the auctioneer which the state had a right to levy. In that case, as in others, it was claimed that the privilege of being an auctioneer derived from the state by license, was subject to such taxation as the state chose to impose, but the proposition was overruled; and this court held that the tax was a regulation of commerce with foreign nations, and that the fact that it was a tax upon the business of an auctioneer did not relieve it from the objection arising from the constitutional provision.

The same question arose in the case of *The Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196. That company was a corporation chartered by the state of New Jersey to run a ferry carrying passengers and freight between the town of Gloucester, in that state, and the city of Philadelphia, in the state of Pennsylvania. It had no property within the state of Pennsylvania, but it leased a landing-place or wharf

in that city for its business. The Auditor General and Treasurer of the state of Pennsylvania assessed a tax upon the capital stock of this corporation under the laws of that state, which the company refused to pay. Its validity was sustained by the state Supreme Court, and the question was brought to this court by a writ of error. It was insisted that the tax was justified as a tax upon the business of the corporation, which, it was claimed, was largely transacted in the city of Philadelphia. The Supreme Court of the state, in giving its decision, stated that the single question presented for consideration was, whether the company did business within the state of Pennsylvania within the period for which the taxes were imposed; and it held that it did, because it received and landed passengers and freight at its wharf in the city of Philadelphia. The argument was very much urged in this court that the licensing of ferries across navigable rivers, whether dividing two states or otherwise, had always been within the control of the states, and that this, being a mere tax upon the business of that corporation carried on largely within the state of Pennsylvania, was within the power of that state to regulate. But this court held, after an extensive review of the previous cases, that the business of ferrying across a navigable stream between two states was necessarily commerce among the states, and could not be taxed as was attempted in that case.

In the case of *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34, decided at the last term of the court, it was shown that the legislature of Tennessee had imposed what it called a privilege tax under the constitution of that state of fifty dollars per annum upon every sleeping-car or coach run or used upon a railroad in that state, not owned by the railroad company so running or using it. This, it will be perceived, is very much like the tax in the case before us, except that it is a specific tax of fifty dollars per annum upon the car instead of a tax upon the gross receipts arising from the use of the car by its owner. In that case, after an exhaustive review of the previous decisions in this class of cases by Mr. Justice Blatchford, who delivered the opinion of the court, it

was held that, as these cars were not property located within the state, it was a tax for the privilege of carrying passengers in that class of cars through the state, which was interstate commerce, and for that reason the tax could not be sustained.

Two cases have been decided at the present term of the court in which these questions have been considered, one of them at least involving the subject now under consideration, namely, that of *Robbins* v. *Taxing District of Shelby County*; 120 U. S. 489. A statute of that state declared that "all drummers, and all persons not having a' regular licensed house of business in the taxing district, offering for sale or selling goods, wares, or merchandise therein by sample, shall be required to pay to the county trustee the sum of ten dollars per week, or twenty-five dollars per month, for such privilege." Robbins was prosecuted for a violation of this law, and on the trial it appeared that he was a resident and a citizen of Cincinnati, Ohio, who transacted the business of drumming in the taxing district of Shelby County, that is, soliciting trade by the use of samples, for the firm by which he was employed, whose place of business was in Cincinnati, and all the members of which were residents and citizens of that city. It was argued in that case, as in the others we have just considered, that the state had a right to tax the business of selling by samples goods to be afterwards delivered, and to impose a tax upon the persons called drummers engaged in that business. It was further insisted that, since the license tax applied to persons residing within the state as well as to those who might come from other states to engage in that business, that it was not a tax discriminating against other states, or the products of other states, and was valid as a tax upon that class of business done within the state. The whole subject is reconsidered again in this case by Mr. Justice Bradley, who delivered the opinion of the court, in which it is held that the business in which Robbins was engaged, namely, that of selling goods by sample, which were in the state of Ohio at the time and were to be delivered in the city of Memphis, Tennessee, constituted interstate commerce, and that, so far as this tax was to be imposed upon Robbins for doing that kind of

business, it was a tax upon interstate commerce, and therefore not within the power of the state to enforce.

In the case of *Wabash Railway Co. v. Illinois*, 118 U. S. 557, the question presented related to a statutory regulation of that state as to compensation for carrying freight. It was held by the Supreme Court of Illinois to embrace all contracts for transportation by railroad which came into or went out of the state, as well as that which was wholly within its limits, and although the controversy did not arise in regard to a *tax* upon interstate commerce, yet the general question was fully considered as to what was interstate commerce and what was commerce exclusively within the state, and how far the former could be thus regulated by a statute of a state. This court held in that case that no statute of a state in regard to the transportation of goods over railroads within its borders, which was a part of a continuous voyage to or from points outside of that state, and thus properly interstate commerce, could regulate the compensation to be paid for such transportation; that the carriage of passengers or freight between different points is commerce, and except where that is wholly and exclusively within the limits of a state it is not subject in its material features to be regulated by the state legislature.

In many other cases, indeed, in the three last cases mentioned, the whole subject has been fully examined and considered with all the authorities, and especially decisions of this court relating thereto. The result is so clearly against the statute of Michigan, as applied by its Supreme Court, that we think the judgment of that court cannot stand.

*The decree of the Supreme Court of Michigan is reversed, with directions for further proceedings in accordance with this opinion.*