### NORTHWESTERN TELEPHONE EXCHANGE CO. v. CITY OF ST. CHARLES.

(Circuit Court, D. Minnesota, First Division. January 21, 1907.)

**1. TELEGRAPHS AND TELEPHONES—RIGHT TO USE OF STREETS—MINNESOTA STATUTE.**

Act Minn. April 19, 1893, Laws 1893, p. 189, c. 74, amending Gen. St. Minn. c. 34, tit. 1, § 42, which as it then stood gave telegraph and telephone companies the right to erect poles for their wires in any road or highway in the state, by providing that they should not use streets or alleys in any city or village without obtaining a franchise from such city or village, was within the power of the Legislature over public highways, the statute before amendment merely granting a license, which the Legislature could revoke or modify at any time, except in so far as it had been previously acted upon by the actual erection of poles in streets or highways; and under such amended statute and Act April 13, 1901, of similar import, a city or village may exclude any telephone company from using any street or alley not used by it prior to the amendment, unless authorized by an ordinance or resolution of its council.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, §§ 2, 6.

Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Tel. & Tel. Co. v. City of Richmond, 44 C. C. A. 155.]

**2. SAME.**

The fact that a telegraph or telephone line, when completed, will be used as an instrument of interstate commerce, gives a company projecting the same no greater rights respecting right of way than are possessed by a purely local company, and it can use the public streets or highways for its line only subject to the state statutes.

Cobb & Wheelwright, for complainant.

Webber & Lees and F. C. Campbell, for defendant.

LOCHREN, District Judge. Counsel for defendant move that the case be dismissed for want of jurisdiction, and after full hearing of the same the motion is denied. Counsel for both sides then present the case to the court on its merits upon the evidence, and after due and full consideration thereof the court renders the following decision orally:

The case is certainly an important and a very interesting one, and it has been fully presented by counsel. I do not think that in the determination of the matter it will be necessary for me to go over the entire scope of the proceedings that have been taken in this case; for to my mind it all depends upon one question, and that is, whether the complainant company has the right, without the consent of the city authorities of the city of St. Charles, to establish a telephone exchange in that city at the present time, which, while it would give local telephone service to the citizens who might choose to patronize it and become subscribers, would also undoubtedly aid the complainant's long distance service, for which it has already a line established within the city of St. Charles, extending from Winona, by the way of Rochester, to Mankato, and either directly or by its connections extending into other states than the state of Minnesota.

It appears that the complainant company was established under chapter 34 of the General Statutes of the state of Minnesota, in the month of December, 1878, and that on the 7th day of March in the year 1881 an act was passed by the Legislature of the state of Minnesota amending section 42, tit. 1, c. 34, so as to make the same read as follows:

"Any telegraph or telephone corporation organized under this title has power and right to use the public roads and highways in this state, on the line of their route, for the purpose of erecting posts or poles on or over the same to sustain the wires or fixtures; provided that the same shall be so located as in no way to interfere with the safety or convenience of ordinary travel on or over the said roads or highways."

Then on April 19, 1893, an act was passed, amending the same title, providing that:

"No corporation formed under this title shall have the right to construct, maintain or operate upon or within any street, alley or other highway of any city or village, any improvement of whatsoever nature or kind, without first obtaining a franchise therefor from such city or village according to the terms of its charter, and without first making just compensation therefor, as herein provided."

And on the 13th day of April, 1901, there was an act passed by the Legislature of the state of Minnesota, which provided that:

"Nothing herein shall be construed to grant to any person, persons, associations or corporation, any rights for the maintenance of a telephone system within the corporate limits of any city or village in this state, until such person, persons, associations or corporation shall have obtained the right to maintain such system in such village or city, nor for a period beyond that for which the right to operate such system is granted by such city or village."

Now it is unquestioned that the Legislature of the state has the power, as a governmental function, to control the highways of the state, which include streets in cities and villages, as well as alleys; and that has always been the law. Under this amendment of March 7, 1881, there was granted to telegraph and telephone companies the right and privilege of placing their poles bearing wires upon the public highways of the state, provided that it should be exercised in such a way or manner as should not in any way interfere with the ordinary travel of the highways. This, in my opinion, constituted a license to telegraph or telephone companies to make such use of the highways of the state as was provided in that act; and in all cases where that was done while that act was in force in the language expressed in the act of March 7, 1881, and moneys expended by the corporation placing the poles and wires upon the highways, it would be equivalent to a contract on the part of the state that such corporation should have the right to continue to use the poles and wires so constructed and erected, and, of course, to make the necessary repairs from time to time to keep the line in efficient condition.

But I cannot assent to the idea that the offer of this privilege or license took away from the state in any manner the continuing power of absolute control over the use of the highways and streets in the state. As I said, such control is a governmental function, and not a proprietary one. The state, absolute as its power is over the use of the streets and highways, is not ordinarily the proprietor of those streets and alleys. It does not own the fee, which usually belongs to the abutting owner. But the right of the public to use the streets for the ordinary purposes for which highways are used is superior to any right of the owner of the fee of the land; and the fact that the state does not own the fee in no way diminishes its power and control over the use of the streets. It had the right, so far as companies had not taken advantage of the license that was offered, at any time to change the terms upon which it would assent to the use of the streets for telegraph or telephone purposes, or to abolish those privileges altogether. There would be nothing in the shape of a contract between any such company and the state, except so far as the companies had used that license and expended money upon it; and with respect to all other streets and highways in the state such company would have no continuing license or control after a change in the law relating to the subject. Therefore I think it was within the power of the Legislature, after the passage of the act of March 7, 1881, even although the complainant had before that time formed the idea of covering the state and its cities and villages with telephone lines and exchanges, so far as that had not been done in the actual use of license or privilege theretofore granted, to make a change, and thereupon the license, so far as not used, would cease; or the Legislature might attach other conditions to the license, and by the act of April 19, 1893, and the later act of April 13, 1901, it did, as far as urban highways were concerned, or streets and alleys in cities and villages, attach another condition, prohibiting the use of the streets and alleys in villages by telegraph or telephone companies unless a franchise to that effect was granted by the city or village authorities.

Now the evidence shows that the complainant company made no attempt to use the streets and alleys of the city of St. Charles until the year 1896, when it applied to the city council for authority to erect its poles and wires upon certain streets, and by resolution of the council it was granted permission to erect poles and wires for a telephone line upon the following streets:

"Commencing at the corner of Richland and Hoyt, running west on Hoyt to Bluff street, north on Bluff street to the Chicago & Northwestern Railroad track; then commencing at the corner of Hoyt and Lamb streets, running north on Lamb street, to intersect with Whitewater street, and continue north to their telephone exchange. The above poles to be set as directed by the street committee, and to be painted by the telephone company as soon as in condition to do so."

The testimony shows that at that time this work was done for the purpose of forming part of a long-distance telephone line, which at that time extended from Winona to Rochester, and afterwards was carried westward to Mankato, connecting then or afterwards with telephone lines belonging either to the complainant company or to other companies, extending into the states of North and South Dakota, Iowa, and Wisconsin. The testimony also shows that poles and wires were erected and constructed as provided by this resolution, and a pay station on the long distance telephone line was established at St. Charles and made use of; that this continued until the year 1899, when a contract was entered into in October of that year with the People's Telephone Company, which had a local telephone exchange in the city of St. Charles, and also connecting with other villages in the southeast part of the state of Minnesota, and upon the making of the contract the complainant's telephone system was carried into the exchange of this local company, and remained there for some five years, the life of the contract, and some months in extension, until some time in July, 1905, when the complainant, failing to renew its contract with the People's Telephone Company, disconnected its wires from the exchange of that company and applied to the city council in the early part of August, 1905, for permission to erect poles and wires upon several of the streets and alleys in the city and to establish a local telephone exchange in the city, which would be connected with its long-distance lines and be of service in aid of that line, and also in furnishing a local telephone system for the citizens of the city of St. Charles. It appears that the city council failed and refused to grant this permission, and the complainant company has never obtained permission from the city council of the city of St. Charles to erect any poles or place any wires upon the streets or alleys of that city, except the right which was granted in 1895, as aforesaid.

There is no doubt that the long-distance telephone established by the complainant company, which runs through the city of St. Charles, extending from Winona to Mankato, and connecting with other states, is an instrument used in interstate commerce, and that the transmission of intelligence over a telephone or telegraph line is interstate commerce. That is well settled in the decisions. But I apprehend that this fact makes no difference in the present case. While any interference by the Legislature with an established instrument of in-

terstate commerce might be a subject of criticism, still the fact that a line of telegraph or telephone will, when completed and in use, be used for the purpose of interstate commerce, gives no right to the persons or corporations projecting the establishment of a concern of this kind to do so upon terms different from what others would be required to submit to in the establishment of a similar enterprise. I mean, by that, that they would have no right of way, simply because the instrumentality would be used for interstate commerce, other than it would have if it was only suitable for any other public use. A railroad company, or a telegraph company, or a telephone company, would have to supply its own instrument, its railroad, its telegraph line, its telephone line, without any reference to what its use would be, in the ordinary manner. It would have to obtain its right of way, either by a grant or license from the state where it was upon the highways of the state, or by purchase or condemnation where it was upon private property. Therefore I do not see that the fact that this is an instrument of interstate commerce affects the decision of the case at all, or has any bearing upon it.

Under the laws of the state as they existed at the time that this enterprise was entered into in the city of St. Charles, the complainant company had no right to occupy the streets of that city without the consent of the city council, and without what in the terms used by the Legislature of the state is called a "franchise" from the city council authorizing the complainant to so occupy the streets. It did get such permission as to the streets that are named in the resolution of 1896, but it never has obtained such permission with respect to any other streets; and at the present time it has no right or authority to build its lines upon any other streets than those so named. It seems that on the 22d day of August, 1905, the city council of St. Charles passed an ordinance which provided that:

"No person or persons or corporation shall erect or set any telephone, telegraph, electric light, or power poles of any sort for the support of wires in any public street, road, or alley, or in any public ground, in the city of St. Charles, unless authorized by ordinance or resolution duly passed and adopted by the city council of said city; nor shall any person or corporation, unless so authorized, string, place, or fasten upon any pole, tree, building, or otherwise any telephone, telegraph, or electric light or power wire in or upon any such public places or grounds, or fasten any cross-arms, brackets, or other support in or upon the same."

Then the ordinance denounces severe penalties for any violation of its provisions. It is to restrain the city council from enforcing this ordinance that this suit is brought. As the city council has, under the charter of the city, the control, supervision, and management of the streets and alleys of the city, it seems to me that it is proper, and within the power of the city council, to pass an ordinance of this kind and to enforce it in the manner provided in the ordinance. It seems to me that it does not affect any rights of the complainant company, because it does not apply to any case where the occupation of the streets or alleys has been authorized by ordinance or resolution duly passed or adopted by the city council, and therefore it would not apply to the long-distance telephone line complainant is now using, and which, so

far as appears in this case, is all that the complainant company has any right to construct.

My opinion, therefore, is that the bill should be dismissed.