HASKELL, Governor of Oklahoma, et al. v. COWHAM.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1911.)

No. 3,401.

*(Syllabus by the Court.)*

1. COMMERCE (§ 61*)—INTERSTATE COMMERCE—CHAPTER 37, LAWS OF OKLAHOMA 1907, VIOLATES—ACTS OF OFFICERS PREVENTING GAS PIPE LINES IN INTERSTATE COMMERCE ACROSS HIGHWAYS UNJUSTIFIABLE.

Chapter 67, Laws of Oklahoma 1907, which by its terms and by its necessary effect discriminates against and prevents all interstate commerce in the natural gas in Oklahoma by absolutely preventing the use of pipe lines across the highways of that state to transport such gas out of the state, violates the Constitution of the United States, and is void.

And the acts of officers of a state done and threatened for the purpose of preventing an owner of such gas from laying and operating pipes to transport it out of the state across such highways are unjustifiable, and may be enjoined.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 61.*]

2. MINES AND MINERALS (§ 48*)—EMINENT DOMAIN (§ 2*)—CONSTITUTION—TAKING PROPERTY WITHOUT COMPENSATION—CONSERVATION OF NATURAL RESOURCES.

The right of a private citizen by means of his ownership of, or of his mining leases of, land to draw gas or oil from beneath its surface is property and sometimes valuable property.

The prevention of the sale of that property or of the oil or gas deriva-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ble therefrom in interstate commerce is a taking thereof without just compensation in violation of article 5 of the amendments to the national Constitution, and it is not justified by the power of a state to conserve its natural resources.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 48;* Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

**3.** STATES (§ 191*)—COURTS (§ 289*)—JURISDICTION—INJUNCTIONS—SUITS AGAINST STATES—SUITS AGAINST STATE OFFICERS TO ENJOIN ACTS WARRANTED ONLY BY UNCONSTITUTIONAL LAWS, COGNIZABLE.

Suit by an owner of natural gas in Oklahoma against officers of that state to enjoin them from preventing him from laying and operating pipe lines across the highways of that state for the purpose of conducting his gas out of the state and of selling it in interstate commerce is not a suit against the state because the preventive acts of the officers are by reason of the Constitution of the United States unjustifiable and illegal, and a national court has plenary jurisdiction to entertain the suit and to grant the injunction.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. § 191;* Courts, Cent. Dig. § 830; Dec. Dig. § 289.*

Federal jurisdiction in suit against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

**4.** COMMERCE (§ 12*)—COMMERCIAL CLAUSE PROHIBITS PREVENTING OR UNREASONABLY BURDENING INTERSTATE COMMERCE IN SOUND ARTICLES.

Neither a state nor its officers by the exercise of, or by the refusal to exercise, any or all of its powers, may prevent or unreasonably burden interstate commerce in any sound article thereof.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 7, 9; Dec. Dig. § 12.*]

**5.** COMMERCE (§ 12*)—CONSTITUTION—COMMERCIAL CLAUSE PROHIBITS DISCRIMINATION AGAINST INTERSTATE COMMERCE.

Neither a state nor its officers by the exercise of, or by the refusal to exercise, any or all of its powers, may substantially discriminate against interstate commerce or the right to carry it on.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 7, 9; Dec. Dig. § 12.*]

**6.** COMMERCE (§ 10*)—COMMERCIAL CLAUSE PROTECTS FREEDOM OF USE OF PIPE LINES IN INTERSTATE COMMERCE IN NATURAL GAS.

Interstate commerce in natural gas, including the transportation thereof in pipe lines, is a subject national in its character and susceptible of regulation by uniform rules, and the silence or inaction of Congress regarding it is a conclusive indication that it intends that interstate commerce therein shall be free and laws of states, and acts of its officers which either prohibit or substantially burden it are without justification violative of the Constitution and void.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8; Dec. Dig. § 10.*]

**7.** COMMERCE (§ 61*)—COMMERCIAL CLAUSE—STATE AND ITS OFFICERS FORBIDDEN TO PREVENT INTERSTATE COMMERCE IN NATURAL GAS BY MEANS OF THEIR POWER OVER HIGHWAYS.

Neither a state nor its officers may prevent or unreasonably burden interstate commerce in the natural gas within it by preventing the use to transport it of pipe lines across the highways of the state by means of the exercise, or the refusal to exercise, the police powers or the proprietary powers of the state over them.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 61.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Bill by W. F. Cowham against Charles N. Haskell, Governor of Oklahoma, and others. Decree for complainant, and defendants appeal. Affirmed.

C. B. Ames and Charles West, Atty. Gen. (W. C. Reeves, Preston C. West, and Flynn, Ames & Chambers, on the briefs), for appellants.

Eugene Mackey and Edward W. Hatch (Edward L. Scarritt, G. T. Stanford, John J. Jones, Parker, Hatch & Sheehan, Scarritt, Scarritt & Jones and Stanford & Stanford, on the brief), for appellee.

Before SANBORN and ADAMS, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge.  May the officers of a state by means of its police or proprietary power over the highways of the state prevent all interstate commerce in a sound article thereof?  This is the question which in the last analysis this case presents.  It arises on an appeal taken by Charles N. Haskell, the former governor, Charles West, the Attorney General, and others, from an interlocutory injunction against their so doing.  That injunction was granted at the suit of the complainant below, W. F. Cowham, a citizen of the state of Michigan, upon this state of facts:  He is the owner of gas wells of great volume, value, and pressure and of gas mining leases on land in Rogers county and in Washington county, in the state of Oklahoma, which are tributary to a right of way for a pipe line to conduct natural gas which he owns over a lot of land that adjoins the state of Kansas, and he seeks to sell his Oklahoma gas to be delivered in the state of Kansas, and to build and operate a gas pipe line from his wells northerly across the Kansas line into the state of Kansas for the purpose of conducting his gas into the latter state.  The defendants prevent and threaten to continue to prevent him from selling his gas in interstate commerce by preventing him from conducting it out of the state of Oklahoma by patrolling the state line between that state and Kansas, and preventing the construction or operation across the highway on that line and across the other highways in the state of Oklahoma of the pipe line of the complainant and of any other pipe line by means of which his gas may be conducted out of the state of Oklahoma.

The only practicable method of transporting natural gas is by a pipe line and the prohibition of the use of a pipe line for that purpose is in effect a prevention of its transportation.  While the defendants are prohibiting and preventing in this way, except as they are restrained by the orders of the courts, all sales and all transportation of Oklahoma gas in interstate commerce, they are at the same time permitting sales of such gas and the operation of 500 miles of pipe lines in the state of Oklahoma to transport it in commerce within the state, and the complainant is ready and willing and offers to construct and operate his pipe line across the highways of the state in the same manner and with the same regard for the use of these highways for travel and transportation with which existing pipe lines have been laid and are operated.

In justification of their acts, the defendants below invoke the police power and the proprietary power of the state over its highways and

chapter 67 of the Laws of Oklahoma, 1907. In Oklahoma there are public highways two rods in width along each of the lines of the government sections. For the purpose of the discussion and disposition of this case, it is conceded, but it is not admitted or decided, that the state has the title to the land in those highways. Nevertheless it holds this land in trust for the public use of the travel of persons and animals and the transportation of articles of commerce, and not for the purpose of preventing such a public use. The state undoubtedly has authority under its police power and under its proprietary power alike so to regulate and control the use of the highways as to maintain reasonably safe and convenient roadways for travel and transportation. Counsel for the defendants planting themselves upon these powers insist that by virtue of them the state may prevent the use, nay more, even the crossing, of its highways beneath the surface of the ground by pipe lines used to conduct interstate commerce. It was upon this theory and to this end that chapter 67 of the Laws of 1907 was enacted, and this was the method pursued to accomplish this purpose. That chapter provided (1) that domestic corporations might be organized for the purpose of transporting natural gas, but that none of them should have the right of eminent domain, or the right to use the highways of the state, unless it was expressly stipulated in its charter that it should transport or transmit natural gas through its pipe lines to points within the state only (sections 1 and 2); (2) that no foreign corporation engaged in or formed to engage in the business of transporting natural gas by means of pipe lines should ever be permitted to conduct that business in Oklahoma (section 3); (3) and that no person, firm, association, or corporation should ever be permitted to transmit or transport natural gas by means of pipe lines in Oklahoma except domestic corporations and factories which may transport it only within the state and are prohibited from conducting it out of the state (sections 9 and 10). The actual and necessary effect of this statute and of the prevention of the crossing of the lines of the highways of the state beneath their surface by any pipe lines used to transport natural gas out of the state is the complete prevention of all interstate commerce in that gas in Oklahoma; for it cannot be sold to be delivered out of the state unless it can be transported out of the state, and it cannot be transported out of the state without the use of pipe lines across the lines of the highways on the section lines upon the borders of and across the state. The statute, if valid, justifies this prevention, for under it no one may construct or use pipe lines across the lines of the highways for the purpose of transporting natural gas out of the state. Domestic corporations may not (sections 1 and 2). No other corporation may (sections 3 to 8). No person, firm, or association may (section 10). So it is that all interstate commerce in the natural gas in Oklahoma, not only by the complainant, but by any and all parties whomsoever, is by this statute of Oklahoma and the acts of its officers here in question absolutely prohibited by their use or abuse of the police power and the proprietary power of the state. And, if in this way that state can prevent interstate commerce in natural gas, it may in the same way prevent it in grain, in

coal, in all manufactures, and in every other article of commerce, and the method so diligently sought for more than a century whereby a state may nullify the commercial clause of the Constitution has at last been discovered. How can these things be and by what arguments do counsel for the defendants seek to maintain this conclusion?

They say: (1) The state has the power to deny to foreign corporations the right to do business within its borders. Therefore it may deny them the right to lay and operate pipe lines to transport natural gas in interstate commerce. (2) The state has the power to determine who shall maintain and operate pipe lines to transport gas and on what terms, hence it may deny this privilege to all except domestic corporations. (3) The state has the power to prescribe the limitations of the franchises it grants to its domestic corporations; hence it may lawfully provide that the privilege of laying and operating pipe lines shall be granted to those domestic corporations only that agree not to transport natural gas in interstate commerce. (4) The state owns the highways, hence it has the power to withhold from all the privilege of laying and operating pipes across the lines of these highways beneath their surface for the purpose of transporting natural gas, or any other articles in interstate commerce. (5) The United States has the power to grant to the complainant, or to some other party, the authority to condemn the right of way to transport natural gas in interstate commerce across the highways of Oklahoma, but it has not exercised that power.

But these contentions disregard the fundamental grant by the people to the nation of the power to regulate commerce among the states and they are all answered by these simple and indisputable principles of law. No state by the exercise of or by the refusal to exercise any or all of its powers may prevent or unreasonably burden interstate commerce within its borders in any sound article thereof. Henderson v. Mayor of New York, 92 U. S. 259, 271–272, 23 L. Ed. 543; Railroad Company v. Husen, 95 U. S. 465, 471, 473, 24 L. Ed. 527; Bowman v. Chicago, etc., Ry. Co., 125 U. S. 465, 474, 475, 479, 480–481, 484–485, 488–489, 497, 507–508, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; Mugler v. Kansas, 123 U. S. 623–624, 8 Sup. Ct. 273, 31 L. Ed. 205,

No state by the exercise of, or by the refusal to exercise, any or all of its powers may substantially discriminate against or directly regulate interstate commerce or the right to carry it on. Pullman Company v. State of Kansas, 216 U. S. 56, 65, 30 Sup. Ct. 232, 54 L. Ed. 378; Darnell & Son v. Memphis, 208 U. S. 113, 120–124, 28 Sup. Ct. 247, 52 L. Ed. 413; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213, 34 L. Ed. 862; Voight v. Wright, 141 U. S. 62, 11 Sup. Ct. 855, 35 L. Ed. 638.

The power to regulate commerce among the states was carved out of the general sovereign power when the national government was formed and granted by the people by means of the Constitution to the Congress of the United States. Article 1, § 8. That grant is exclusive. The nation may exercise the power thus given to its utmost extent, and no state may lawfully restrict or infringe this grant or the plenary

exertion of this power, for they are paramount to all the powers of the state, and they inhere in the supreme law of the land. Interstate commerce in natural gas including therein its transportation among the states by pipe line is a subject national in its character and susceptible of regulation by uniform rules. The silence or inaction of Congress relative to such a subject is a conclusive indication that it intends that interstate commerce therein shall be free, and any law or act of a state or of its officers which prohibits it or substantially restrains its freedom is violative of the Constitution and void. Welton v. State of Missouri, 91 U. S. 275, 282, 23 L. Ed. 347; Brown v. Houston, 114 U. S. 622, 631, 5 Sup. Ct. 1091, 29 L. Ed. 257; Walling v. Michigan, 116 U. S. 446, 455–456, 6 Sup. Ct. 454, 29 L. Ed. 691; Case of the State Freight Tax, 15 Wall. 232, 21 L. Ed. 146.

It may be that, if the state had granted to specified common carriers the privilege of piping natural gas in interstate commerce across its highways and had withheld that privilege from the complainant and others, the complainant could not have maintained his right to lay and operate a pipe line across these highways. But against the complete prevention of every one from conducting in interstate commerce this natural gas which the state and the defendants are endeavoring to enforce by preventing the laying and operation of any pipe lines to transport it the commercial clause of the Constitution is an ample franchise to the complainant to conduct that commerce and to use the indispensable means so to do, the pipes across the highways of the state of Oklahoma. No state may by means of its police power, or its proprietary power, over highways or by means of any of its other powers, erect and maintain impassable barriers against interstate commerce along its borders or through its body in the face of the grant to the nation of the power to regulate that commerce; for all the powers of the state are subordinate to this power of the nation and to its will that such commerce shall be free. Illustrations of this proposition are not rare. In St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 100, 101, 105, 13 Sup. Ct. 485, 37 L. Ed. 380, a case much cited by counsel for the defendants, the company had a congressional license to construct and maintain telegraph lines along the post roads of the United States, and hence on the streets of St. Louis. But it had no national or other franchise to exercise the power of eminent domain (Western Union Telegraph Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 570, 25 Sup. Ct. 133, 49 L. Ed. 312), and it was a foreign corporation. The Supreme Court held that the city of St. Louis might require it to pay just compensation for the use of its streets, but "that the occupation by this interstate commerce company of the streets cannot be denied by the city; that all that it can insist upon is, in this respect, reasonable compensation for the space in the streets thus exclusively appropriated." By the same mark the state of Oklahoma may not prevent the complainant from selling and piping his gas in interstate commerce across the highways of the state when that is the only method whereby he can use it in interstate commerce at all.

In State v. Indiana & Ohio Oil, Gas & Mining Co., 120 Ind. 575, 22 N. E. 778, 6 L. R. A. 579, a case which involved the right of a for-

eign corporation which had no power of eminent domain to secure the right of way to lay and operate pipes for the purpose of conducting gas in interstate commerce, the Supreme Court of Indiana held that the legislation of the state and the action of its officers to prevent it from so doing were unconstitutional and void because they destroyed interstate commerce in that article, and this decision was confirmed by that court in 1900 in Manufacturers' Gas & Oil Co. v. Indiana Natural Gas & Oil Co., 155 Ind. 545, 58 N. E. 706. To the same effect are the decisions in Ohio Oil Co. v. Indiana, 177 U. S. 190, 205, 20 Sup. Ct. 576, 44 L. Ed. 729, and Benedict v. Columbus Construction Co., 49 N. J. Eq. 33, 23 Atl. 485, 490–492. The states have the power to refuse to allow, or, on such terms as they may prescribe, to permit, foreign corporations to do business within their borders. But they may not prevent such corporations, although they are without any national franchise so to do other than the commercial clause of the Constitution, from carrying on interstate commerce within their limits. Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 6–11, 12, 13, 84 C. C. A. 167, 172–177, 178, 179, where the decisions of the Supreme Court which establish this proposition—Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357; Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 8, 24 L. Ed. 708; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 736, 737, 5 Sup. Ct. 739, 28 L. Ed. 1137; Pembina Mining Co. v. Pennsylvania, 125 U. S. 181, 190, 8 Sup. Ct. 737, 31 L. Ed. 650; Norfolk & Western R. R. Co. v. Pennsylvania, 136 U. S. 114, 115, 120, 10 Sup. Ct. 958, 34 L. Ed. 394; Crutcher v. Kentucky, 141 U. S. 47, 57–59, 11 Sup. Ct. 851, 35 L. Ed. 649; Horn Silver Mining Co. v. New York State, 143 U. S. 305, 315, 12 Sup. Ct. 403, 36 L. Ed. 164; Osborne v. Florida, 164 U. S. 650, 655, 17 Sup. Ct. 214, 41 L. Ed. 586; Caldwell v. North Carolina, 187 U. S. 622, 623, 23 Sup. Ct. 229, 47 L. Ed. 336; Insurance Company v. Morse, 20 Wall. 445, 455, 456, 22 L. Ed. 365—are cited and reviewed.

A state has the power of taxation. But it may not so exercise that power as to prevent or discriminate against interstate commerce by those engaged in it who have no national franchise of exemption, except the commercial clause of the Constitution. Henderson v. Mayor of New York, 92 U. S. 259, 23 L. Ed. 543; Fargo v. Michigan, 121 U. S. 230, 7 Sup. Ct. 857, 30 L. Ed. 888; Galveston, etc., Ry. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031; Phila. Steamship Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200; Robbins v. Shelby County, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 391. The states have the power of inspection. But they may not so exercise that power or so refuse to exercise it as to prevent or interfere with interstate commerce in sound articles of commerce. Bowman v. Chicago, etc., Ry. Co., 125 U. S. 465, 490, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; Minnesota v. Barber, 136 U. S. 313, 324, 10 Sup. Ct. 862, 34 L. Ed. 455. Cases to the same effect are too numerous to review and we leave them here.

Last year the Supreme Court in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 7, 27, 30 Sup. Ct. 190, 54 L. Ed. 355, and Pullman Company v. State of Kansas, 216 U. S. 56, 65, 30 Sup. Ct. 232, 54 L. Ed. 378, cases in which the companies were foreign corporations without other franchise to conduct interstate commerce in Kansas than the commercial clause of the Constitution, the Supreme Court held that a law of that state and the acts of its officers which were limited to requiring these companies to pay heavy fees for the privilege of conducting intrastate commerce only in Kansas, but expressly permitted them to carry on interstate commerce without restrictions, were unconstitutional and void because they had the necessary effect substantially to burden interstate commerce. And Chief Justice White said that these two propositions were so conclusively established by the previous decisions of that court that they were beyond controversy:

"(1) A state may not exert its concededly lawful powers in such a manner as to impose a direct burden on interstate commerce. This is so elementary as to require no reference to the multitude of authorities by which it is sustained.

"(2) Even though a power exerted by a state, when inherently considered, may not in and of itself abstractly impose a direct burden on interstate commerce, nevertheless such exertion of authority will be a direct burden on such commerce if the power as exercised operates a discrimination against that commerce, or, what is equivalent thereto, against the right to carry it on."

Under these principles and decisions, there is no escape from the conclusion that chapter 67 of the Laws of Oklahoma of 1907, which, by its terms and by its necessary effect, prevents interstate commerce in the natural gas in that state, and discriminates against that commerce and in favor of commerce therein within the state, is unconstitutional and void, and the acts done and threatened by the defendants for the purpose of preventing the complainant from selling his Oklahoma natural gas in interstate commerce and conducting it out of the state by pipe lines across its highways beneath the surface thereof were violative of the commercial clause of the Constitution and without legal justification.

This result has not been reached without a careful examination and consideration of the authorities cited for the defendants. Those upon which they seem to rely most confidently are St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 100, 101, 105, 13 Sup. Ct. 485, 37 L. Ed. 380, which has already been reviewed; Northwestern Telephone Exchange Co. v. St. Charles (C. C.) 154 Fed. 386, a case in which the telephone company had long maintained a telephone line upon certain streets of St. Charles by means of which it was carrying on interstate commerce without objection or restriction. It had applied to the city council for a license to place new poles on other streets for the purpose of establishing a local telephone exchange which it intended to connect with its interstate commerce line, and the council had denied that application. It then exhibited its bill, and prayed the federal court to grant it a mandatory injunction to compel the city and its officers to permit it to erect and maintain its poles and lines in certain streets of the city which it selected and the court refused to grant its prayer because the action of the city and its officers only incidentally

and remotely affected complainant's interstate commerce, and did not prevent or substantially burden it. Hudson Water Co. v. McCarter, 209 U. S. 349, 356, 28 Sup. Ct. 529, 52 L. Ed. 828, wherein the Supreme Court held that a state might lawfully prohibit the transportation of the waters of its rivers, lakes, and ponds out of the state by means of canals or conduits because the interest of a state to maintain the rivers within it undiminished by diversions of their waters from their natural channels to other jurisdictions is fundamental, omnipresent, more pressing as population increases and superior to the right of the riparian proprietors which is subject "to the initial limitation that it may not substantially diminish one of the great foundations of public welfare and health." But the right of the owner of grain, iron, coal, oil, and natural gas in a state is subject to no such initial limitation. The reason for the rule which dominates this decision does not exist in the case of the prohibition of the transportation out of a state of such articles owned by private parties and cessante ratione, cessat et ipsa lex. Western Union Telegraph Co. v. Pennsylvania R. R. Co., where the Supreme Court held that the telegraph company had no right to appropriate to its use a part of the right of way of the Pennsylvania Company without the power of eminent domain and the making of just compensation for the property taken. But there were other means than by the condemnation of the right of way of the Pennsylvania Company whereby the telegraph company could freely conduct its interstate commerce in Pennsylvania, and the court neither considered nor decided that a state or its officers could prevent all interstate commerce by so using or refusing to use its conceded powers as to make all such commerce within its borders impossible: and Consumers' Gas Co. v. Harless, 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505, a case in which the Supreme Court of Indiana held in a suit between a domestic corporation and the owner of land it sought to condemn that a grant of the power of eminent domain to the corporation to enable it to pipe gas in intrastate commerce was not void because it was not coupled with a further grant of the power of eminent domain to enable the company to pipe gas in interstate commerce. Nothing is perceived in these decisions in conflict with the fundamental and controlling rules of law that have been stated in the earlier part of this opinion or with the conclusion to which they inevitably lead.

Another position of counsel for the defendants is that the state of Oklahoma, for the purpose of conserving the natural resources of the state and preventing its diminishing supply of gas, may lawfully prevent the complainant from removing from the state the natural gas which he has the right to draw from its soil, and in support of this contention they cite Hudson Water Co. v. McCarter, 209 U. S. 349, 357, 28 Sup. Ct. 529, 52 L. Ed. 828, which has been previously reviewed, New York ex rel. Silz v. Hesterberg, 109 App. Div. 295, 96 N. Y. S. 286, a case which involves the constitutionality of the prohibition of the possession of wild game during the closed season, Commonwealth v. Tewksbury, 11 Metc. (Mass.) 55, In re Opinion of the Justices, 103 Me. 506, 69 Atl. 627, 19 L. R. A. (N. S.) 422, and many other cases less apposite and persuasive.

But an owner who by virtue of his ownership of land or of mining leases thereof has the vested right to draw by means of wells or pumps natural gas from beneath the surface is the owner of valuable property which the state cannot take from him without just compensation and state laws and acts of the officers of a state which prevent him from taking it from the land and selling it and conveying it out of the state in interstate commerce, while they permit the withdrawal and sale of such gas in intrastate commerce, necessarily violate the national Constitution (1) because they take his property without just compensation (Ohio Oil Co. v. Indiana, 177 U. S. 190, 209, 210, 20 Sup. Ct. 576, 44 L. Ed. 729; People v. New York Carbonic Acid Gas Co., 196 N. Y. 421, 441, 90 N. E. 441; Manufacturers' Gas & Oil Co. v. Indiana Natural Gas & Oil Co., 156 Ind. 679, 59 N. E. 169, 60 N. E. 1080); and (2) because they substantially discriminate against and directly regulate interstate commerce.

Finally, the contention that this is a suit against the state is untenable because the defendants are endeavoring by virtue of an unconstitutional law of the state and by virtue of powers of the state which do not justify their action to prevent interstate commerce in a sound article of commerce in violation of the commercial clause of the Constitution.   The court below had plenary jurisdiction to entertain the suit and to grant the injunction and the order for its issue is affirmed. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Ex parte Young, 209 U. S. 123, 154–160, 28 Sup. Ct. 441, 52 L. Ed. 714.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes